GILCHRIST *v.* MYSTIC WORKERS OF THE WORLD.

1. WITNESSES — CONFIDENTIAL COMMUNICATIONS — PHYSICIANS — WAIVER—STATUTES—PUBLIC POLICY.

An anticipatory waiver by an insured in an application for a life insurance policy of the privilege prohibiting the disclosure by attending physicians· of information obtained in a professional capacity, which is to become operative upon the death of the patient, is invalid under Act No. 234, Pub. Acts 1909 (5 How. Stat. [2d Ed.] § 12826; 3 Comp. Laws 1915, § 12550), as being against public policy.

2. ABORTION—DEFINITION—STATUTE—"MISCARRIAGE."

It is not a conclusive defense to a life insurance policy

making such policy void for violation of the criminal laws of the State, that insured procured an abortion upon herself since the word is primarily equivalent to mis-carriage, and the causing or procuring the same, under 3 Comp. Laws, §§ 11502, 11503 (5 How. Stat. [2d Ed.] §§ 14555, 14556; 3 Comp. Laws 1915, §§ 15224, 15225), may, under certain circumstances, be innocent, and even nec-essary to preserve life.

3. EVIDENCE—REBUTTAL.

The term "rebuttal evidence," as commonly understood and applied in practice, means evidence introduced in denial of some affirmative matter of defense which the answering party is endeavoring to prove.

4. APPEAL AND ERROR—DISCRETION OF TRIAL COURT—RECEPTION OF EVIDENCE.

Whether evidence may be given on rebuttal, or after the defense has rested, even though it should properly have been offered in chief, is generally a matter within the discretion of the trial court, which will not be interfered with by the appellate court, unless a clear abuse of dis-cretion is shown.

5. TRIAL—RECEPTION OF EVIDENCE—REBUTTAL.

In an action on a benefit certificate of a fraternal insur-ance company, in which the defense was procurance of a criminal abortion by insured upon herself in violation of terms of the policy making it void for violation of the criminal laws of the State, where a witness for defendant, a nurse, testified that she heard deceased, on the day before her death, tell the attending physician, in response to his questioning, that an abortion had been performed on her the day before she was brought to the hospital, and that deceased told witness that the reason the act was done was that she could not afford to raise any more children, and the witness stated on cross-examination that upon the day deceased was brought to the hospital she stated that she had suffered a miscarriage, brought on by working, held, that evidence of facts tending to show the improbability of the statement implying criminality and the probability of the other was proper in rebuttal.

6. EVIDENCE—QUESTION FOR JURY.

In an action on a benefit certificate against a fraternal insurance company, held, that evidence that a hospital nurse, a witness for defendant, heard insured on the day

before her death tell the attending physician, in response to his questioning, that an abortion had been performed on her the day before she was brought to the hospital, and that deceased told witness that the reason the act was done was that she could not afford to raise any more children, and that upon the day deceased was brought to the hospital she stated that she suffered a miscarriage, brought on by working in the garden, raised a question for the jury as to whether a criminal abortion caused her death or she suffered a miscarriage from unintentional overexertion.

7. JURY—QUESTION FOR JURY—CREDIBILITY OF WITNESSES.
The jury are the judges of questioned facts and of the credibility of the witnesses.

8. EVIDENCE—CRIMINAL LAW.
Evidence *held*, insufficient to establish the defense, in an action on a death benefit certificate, that insured procured a criminal abortion upon herself.

Error to Mecosta; McDonald, J., presiding. Submitted January 18, 1917. (Docket No. 64.) Decided May 31, 1917.

Assumpsit by William H. Gilchrist against the Mystic Workers of the World on a certificate of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Charles E. Sturtz* and *Butler & Everett,* for appellant.

*Albert B. Cogger* and *Broomfield & Worcester,* for appellee.

STEERE, J. A former trial of this case is reported in 188 Mich. 466 (154 N. W. 575), to which reference may be made for a sufficient statement of the nature of the controversy and the undisputed facts. The case has been retried, in the circuit court of Mecosta county, resulting in a verdict and judgment in favor

of plaintiff for $804.30, being the conceded amount due under the benefit certificate upon which this action is brought, provided any liability is shown.

Defendant requested the court to submit to the jury three special questions. The first two were submitted, and the third refused. They are, including the answers to those submitted, as follows:

"(1) Did Mrs. Gilchrist come to her death by reason of an abortion having been committed upon her?
"*A.* No.

"(2) Did Mrs. Gilchrist cause an abortion to be brought about?
"*A.* No.

"(3) Did Mrs. Gilchrist consent to the performing of an operation on her which resulted in an abortion being produced upon her?"

A motion for a new trial was made by defendant for the following reasons.

"(1) That the verdict of the jury was and is against the weight of the evidence, which was produced and received on the trial of said cause.

"(2) That the court erred in excluding the evidence of Dr. George H. Lynch, the physician who attended Grace P. Gilchrist in her lifetime.

"(3) That the court erred in admitting the evidence of the plaintiff's witnesses, Alta Scouten, Neva Scouten, and William H. Gilchrist, as rebuttal testimony, for the reason that the evidence of those witnesses did not, in any way, rebut the testimony produced and received for and in behalf of the defendant."

This motion was denied. The reasons given by the trial court for such ruling are, briefly stated, that the verdict was not so clearly against the weight of evidence as to justify the court in setting it aside; the facts sought to be proven by Dr. Lynch were in their nature confidential information acquired by him while attending deceased professionally, and that the testimony of the three witnesses mentioned in the third

ground of defendant's motion was, in the opinion of the court, proper rebuttal evidence against defendant's claim that deceased died by reason of a criminal abortion.

Defendant called Dr. Lynch, the family physician who attended deceased professionally in her last sickness, and asked him questions upon the subject calling for information obtained in his professional capacity, to which objection was timely made and the proposed evidence was excluded as privileged. When the doctor was called defendant's counsel frankly drew attention to the former ruling of this court upon the admissibility of such evidence, and stated that the proposed testimony was offered under the waiver clause in deceased's application for "the purpose of making the record at this time, with the benefit of an exception." Upon that question, speaking through Justice OSTRANDER, this court said when the case was here before:

"The waiver contained in the application was therefore against public policy and void, and the testimony of the attending physicians as to all knowledge obtained by them in such capacity was properly excluded."

Counsel again urge and argue at length, as was done in defendant's application for a rehearing upon that decision, that the former opinion on this point should be overruled, as against the weight of authority, a construction of the statute inimical to legitimate defense against fraud, and seriously detrimental to the interests of defendant and other insurance companies doing business in this State. After further examination of the decisions cited and the statutes to which they relate in the light of the stringent prohibitory terms of the Michigan statute, as now amended, we remain of the opinion that the language of our statute clearly expresses the legislative intent to prohibit,

as a matter of public policy, anticipatory waivers of this nature which are to become operative after the mouth of the patient is closed by death, and are content with the reasons given in the former opinion.

Deceased was a married woman about 30 years of age, living with her husband and two children in Big Rapids, Mich., near the home of her parents. While at her home she was taken seriously ill in the forenoon of Sunday, May 25, 1913, and on the advice of their family physician was removed to the hospital on the following day, where she died on May 29th. Plaintiff was her husband and the beneficiary named in her policy, or benefit certificate.. Facts were either proven or admitted making out a *prima facie* case for plaintiff.

Defendant under its plea of the general issue had given notice of the defense that deceased breached the terms of her contract of insurance by violating one of its provisions reading in part as follows:

"The society shall not be liable to any member, or the beneficiary of any member, on account of any injury, disability or death caused, directly or indirectly, in whole or in part, by drunken or immoral conduct or which is the result of the wilful act of such member or of his violation or attempted violation of any of the laws of the State or country in which he may be at the time of such injury"

—the wilful act and unlawful conduct charged being that deceased violated a criminal law of this State in procuring and being a party to a criminal abortion upon herself which resulted in her death. To sustain this charge defendant introduced in evidence the admissible portion of the medical certificate of death signed by deceased's attending physician, manifestly prepared by filling out a blank form, which reads in part:

"The cause of death was as follows: Peritonitis. Duration, 5 days. Contributory. Abortion."

The unqualified word "abortion" in its primary meaning is the equivalent of miscarriage, and does not in the abstract necessarily import crime. Our penal statute upon which defendant relies (sections 11502, 11503, 3 Comp. Laws [3 Comp. Laws 1915, §§ 15224, 15225]) adopts the synonymous term "miscarriage," and recognizes in its provisions that, causing or procuring the same, may, under certain circumstances, be innocent, and even necessary to preserve life.

Defendant also introduced as a witness the professional nurse who attended deceased in that capacity during the time she was in the hospital and was present when she died. The nurse testified that she heard deceased, on the day before her death, tell the attending physician, in answer to his direct inquiry, that an abortion had been performed upon her by a certain doctor on the Saturday before she was taken to the hospital; that deceased also talked with witness in regard to it, describing in part what had been done, and giving as a reason that she could not afford to raise any more children. This witness also testified on cross-examination that upon the day deceased was received at the hospital she stated that she had suffered a miscarriage, brought on by working in the garden. Asked by defendant's counsel if witness noticed any peculiar condition after she made the statement on the day before she died, witness answered:

"Just before she made the statement she seemed more restless; after she made it she seemed easier and more calm."

Plaintiff's counsel moved to strike out this answer, and the court said:

"Strike it out, the last part of the answer, that she seemed easier after she made the statement."

After defendant rested plaintiff called as rebuttal

witnesses Alta Scouten, Neva Scouten, and Wm. H. Gilchrist, the mother, sister and husband of deceased. Error is assigned on the admission of the testimony of these witnesses, because not rebuttal. The term "rebuttal evidence," as commonly understood and applied in practice, indicates evidence introduced in denial of some affirmative matter of defense which the answering party is endeavoring to prove. In the orderly course of a trial each party is primarily required to introduce all the evidence upon which he relies to establish his side of the case before he rests, following which a plaintiff may give proof in reply, or rebuttal, to some affirmative fact which has been introduced to sustain the defense. The first evidence in this case offered in regard to an abortion was introduced by the defense, and the only evidence tending to show that it was unlawful, and deceased's death, which plaintiff had proven, resulted indirectly from her wilful act was the nurse's testimony as to statements by deceased. She told of two contradictory statements, the one implying criminality and the other innocence. Conceding that both statements were made as testified to, evidence of facts tending to prove the improbability of the one implying criminality and the probability of the other would fairly be in its nature rebuttal to an affirmative defense. The purpose and import of the testimony complained of was in that direction. But whether evidence may be given on rebuttal, or after the defense has rested, even though it could and should properly have been offered in chief is, as a rule, recognized to be a matter within the discretion of the trial court, which will not be interfered with by the appellate court, unless a clear abuse of the discretion is shown. The nurse's testimony as to deceased's admission of a criminal abortion fixes the date as Saturday, May 24th, and the testimony introduced for rebuttal relates largely to the impossibility

or improbability of such an occurrence in fact upon that date. The trial court rightly ruled that such testimony was not subject to the objection urged.

It was shown, amongst other things, by this rebuttal testimony that deceased's home, where she resided with her husband and children, was near her mother's, and the two families were on familiar terms; that deceased was at her mother's home daily, and was there twice during the morning of the Sunday she was taken ill, once before the family had all arisen, when on her way to get milk, and again with her two little girls, after which she went out with her sister, who was learning to ride a bicycle and instructed her, helping her to ride, and herself riding the wheel up and down a path near her home. Both the mother and sister testified that she was as usual, and apparently all right then, but later one of the little girls came over and said her mother was sick, when Mrs. Scouten at once went over, and, after putting her in bed, called a physician; she testified that deceased was at home all day the previous Saturday (on which it is claimed an abortion was performed), and went down town that evening with her husband to get some shoes for the children, returning while witness was yet there with the children; that witness was at the hospital every day, as long as her daughter lived, and during a part of the time, as her condition became worse, she had a very high fever and was not in her right mind, scarcely knowing her mother when she came into the room. Plaintiff, who was away at work during working hours, testified that he knew of his wife's pregnancy, and she was not sick, "just ailing, as you might call it," that on Saturday evening, May 24th, he went down town with his wife to get some things, and she got shoes for the children, when they returned home together and retired about 10 o'clock, occupying the same room; that he arose first on Sunday morn-

ing, and busied himself getting his garden ready to plant, she getting breakfast as usual; that about 10 o'clock on Sunday she was "taken worse, changed so we really knew she was sick" and he sent for his mother-in-law; that he went with her to the hospital, and was there with her all the time except as conditions necessitated his leaving the room; that she had a high fever the day before she died, which was her worst day, and, while he did not think she was out of her head, she was "a little flighty" and "at random some of the time." In surrebuttal the nurse testified that deceased was rational when she made the statement before testified to.

In this case we have as proof of the fact relied upon by the defense only the testimony of the nurse of two statements by deceased, which are not in harmony. Whether a performed criminal abortion caused her death, or she suffered a miscarriage from unintentional overexertion is a question of fact put in issue by the statement testified to. The condition of deceased, her acts and the surrounding facts and circumstances on the day the abortion is claimed to have been performed and the next day, as also her condition when the statements are said to have been made, cannot be pronounced wholly immaterial and were within the scope of evidential facts for the jury to weigh.

In the somewhat analogous case of *Brown* v. *Mystic Workers of the World,* 151 Ill. App. 517, the court states the essentials of a defense of this nature much more stringently than applied here. That case was an action on a benefit certificate similar to this, and the defense claimed that the assured had procured a criminal abortion by obtaining and taking pills to produce such result.

The court there said in part:

"As we understand the law, the burden of proof

rested upon plaintiff in error [defendant] to establish, by a preponderance of the evidence, each and every element constituting the crime of criminal abortion. * * * Practically the only evidence in the record tending to show her intent to produce a criminal abortion is the testimony of a physician who attended her during her last illness. He testified that she told him she had taken pills to produce the abortion. * * * If it be contended that the crime of criminal abortion is clearly deducible or inferable from this evidence referred to, the fact that she wished an abortion, and the other facts and circumstances appearing in the evidence, the reply is that the jury, in such a case as this, must be regarded as fully as capable of deducing or inferring correct conclusions from facts and circumstances proven as are the members of this court. * * * While Mrs. Brown said to the doctor that she took pills to produce an abortion, that statement may not, for instance, have satisfied the jury and the trial judge that she took pills with a criminal intent. Here such intent was a necessary element. In order to prevail, it was necessary for plaintiff in error to prove such intent by a preponderance of the evidence."

In the instant case the court said to the jury:

"I need not confuse you with any definition of abortion. None is necessary. The question is, Did she ask the doctor to relieve her of pregnancy, and did the act of the doctor result in her death, was that the direct, producing cause of her death? If you find from a fair preponderance of the evidence this theory of the defendant's is true, then your verdict should be no cause of action. * * * If * * * you find that she did come to her death because of her own wrongful act, your verdict would be no cause of action."

—and later in the charge, gave a request of defendant as follows:

"I further charge you, gentlemen of the jury, if you should find from the evidence in this case that the deceased came to her death by reason of procuring an abortion to be performed upon her, that such an act would constitute a breach of contract of insurance be-

196—Mich.—17.

tween herself and the defendant in this case, and if you so find plaintiff cannot recover."

Thus plainly instructed, the jury answered defendant's two special questions as before related. The jury were the judges of the questioned facts, and the credibility of witnesses. They were deciding an issue of fact upon which defendant had the affirmative. We are not able as a matter of law to find their conclusion, from the facts and circumstances proven, that defendant had failed to affirmatively establish the ultimate, disputed fact to their satisfaction, is so against the great weight of evidence as to demand that their verdict be annulled.

No reversible error is found in the rulings of the trial court. The judgment will therefore stand affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, BROOKE, and FELLOWS, JJ., concurred. MOORE, J., did not sit.