## MORRISON *v.* SKEELS

1. AUTOMOBILES—NEGLIGENCE—ACTION AGAINST STATE TROOPER—
   TRIAL—ARGUMENT TO JURY.

   Remarks by defense counsel during his closing argument in an
   action against a state trooper for automobile negligence while
   on duty to the effect that there had been civil disorders re-
   cently in several Michigan communities and many charges of
   police brutality, that the police seemed to be open to attack
   by laymen from all quarters, and that law and order seemed
   to be breaking down *held*, improper injection of false issues
   into the case, and grounds for reversal of judgment for de-
   fendant because police brutality was never charged and there
   was no evidence submitted on the subject.

2. AUTOMOBILES—NEGLIGENCE—ACTION BY PASSENGER—EVIDENCE—
   SIMILAR ACTION BY DRIVER.

   Questioning of the driver of an automobile during trial of an
   action by his wife, who was his passenger, against defendant
   as to whether he also had an action of his own pending against
   defendant *held*, improper, but not by itself grounds for reversal
   where the court cured the error by instructing the jury that
   it was not to consider any other actions that might be pending.

3. AUTOMOBILES—NEGLIGENCE—ACTION FOR DAMAGES—ARGUMENT TO
   JURY—INJECTION OF FALSE ISSUES—OPPOSING COUNSEL'S DRIVING
   RECORD.

   Remarks by plaintiff's counsel during his final argument to the
   jury in an automobile negligence case concerning a recent
   accident in which defense counsel was involved and defense
   counsel's driving record in general in answer to defense

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trials § 480 *et seq.*
[2] 53 Am Jur, Trials § 778.
[3] 53 Am Jur, Trials § 480 *et seq.*

counsel's mention of his own driving practices in his argument *held* an improper injection of false issues into the case and grounds for reversal of judgment for defendant.

Appeal from Saginaw, Hazen R. Armstrong, J. Submitted Division 3 February 12, 1969, at Grand Rapids. (Docket No. 4,542.) Decided April 21, 1969. Rehearing denied June 10, 1969. Leave to appeal denied August 13, 1969. See 382 Mich 774.

Complaint by Lorraine Morrison against Charles Skeels for damages resulting from an automobile accident. Verdict and judgment for defendant. Plaintiff appeals. Reversed.

*Egloff, Mainolfi, Taylor, McGraw & Collison,* for plaintiff.

*Crane, Kessel & Crane,* for defendant.

BEFORE: LEVIN, P. J., and HOLBROOK and DANHOF, JJ.

PER CURIAM. This is an automobile negligence case. Plaintiff, Lorraine Morrison, was a passenger in the automobile driven by her husband. Defendant was a Michigan State police officer driving a marked police car in the performance of his duties at the time of the accident. The accident happened on Dixie highway, a 4-lane highway in Saginaw county. Defendant was driving north and after observing a speeding car going south, he made a U-turn in front of the vehicle in which plaintiff was riding to apprehend the speeder. Neither his flasher nor his siren was on. The Morrison car was traveling south at about 65 miles per hour, the legal limit. Plaintiff's theory of negligence was that defendant

improperly made a U-turn at a time when the vehicle in which she was riding was too close, causing her driver to lose control of the car and turn over which resulted in serious injuries to plaintiff. It is undisputed that the vehicles never touched. Defendant denied that he was negligent and asserted the only cause of the accident was plaintiff's driver's negligence. The jury trial took place from July 18, 1967, to July 26, 1967. The verdict was for the defendant of no cause of action. A motion for new trial was filed by plaintiff and denied. Plaintiff appeals and raises one issue: Is plaintiff entitled to a new trial because of the claimed prejudicial error committed during defendant's counsel's argument by the injection of false issues in the case and by cross-examination of Mr. Morrison, injecting the fact that he was bringing a suit against the defendant in his own name for $20,000?

Plaintiff in her motion for new trial set forth that there had been rioting and burning of buildings started in Detroit on July 23, 1967 and continuing at the time of the oral arguments, and further that there were other riots taking place in other metropolitan cities of the State at that same time.

The referred-to portions of the claimed prejudicial argument appear in the record as follows:

"Now Mr. Collison brought out that Mr. Skeels said he don't make mistakes, that he has to be right, and he is always right, and as attorney for Saginaw township, with my son, we are very careful about who is deputy sheriff out in Saginaw township. We have to know they are right. Otherwise, in this day and age, we have this police brutality. The policeman is always wrong and the sobbing layman is always right. At least, that is what I read in the newspaper and I assume you read the same thing. While I don't enjoy getting a ticket any more than you people do, after 40 years of trying

these lawsuits I'm pretty careful, and I'm proud of my record, I don't try to drive over the speed limit or in a reckless manner, and as far as I'm concerned, I'm very happy to have these speeders pulled down. I don't want to have my neck broken by a lot of reckless people. I merely mention that so you won't have a prejudice against Trooper Skeels for being on your business, and he was on duty, to pursue a speeder." * * *

"Obviously the inference is, there is only one inference to draw from the blackboard, and that is that Mr. Morrison did nothing to cut his speed. He did do something to avoid the accident by turning as he had a right to do. He had 2 things he could easily have done, but, no police brutality, 'I'm right, you are wrong.'

*"By Mr. Collison:* Your Honor, I object. We aren't claiming any police brutality in this case. We are claiming negligence.

*"By Mr. Crane, continuing:*

"All right, police negligence, 'My man is always right, the officer is always wrong.' Put it that way. I'll retract the other statement.

*"By Mr. Collison:* That's kind of you.

*"The Court:* All right, it may be stricken.

*"By Mr. Crane, continuing:*

"It's a fact,—at least the jury ought to weigh it. * * *

"Mr. Morrison and the trooper removed Mrs. Morrison from the car and she was taken to the hospital to the emergency room. She was there x-rayed and she had no broken bones of any kind, nothing, and there wasn't any bleeding or ruining of clothes, or anything like that. She had a bump and she did have an injury to her shoulder, but to me it is quite important as to whether they thought she was injured bad enough to keep her overnight. She wasn't kept overnight, she was released. To me, anyway, that is important because in this day and age where everybody is suing everybody the hos-

pitals get sued and they may have large sums in damages to pay out if they don't do what they should do, and if you go into a hospital after an accident and you are badly injured and they put you out on the street in that condition, you have a cause of action. They don't have charitable immunity any more. I happen to be attorney for St. Luke's Hospital and I'm familiar with the problem. The logical conclusion you can draw from the fact she was there several hours and examined at the Saginaw Osteopathic Hospital, up here on Michigan Avenue, is that they wouldn't have let her go home unless it was all right because that is where their particular interest lies. What happened? She was released. If she had been severely injured, do you think the hospital would have released her and placed themselves in the position of being liable for it?

"*By Mr. Collison:* I think Mr. Crane has gone far enough, your Honor. We aren't claiming liability on the part of a hospital, we are suing a trooper on liability with an automobile.

"*The Court:* I think you are going too far, Mr. Crane.

"*By Mr. Crane, continuing:* Anyway, the testimony is that she went home the same evening of the accident, February 8, 1963, from the Osteopathic Hospital, not by ambulance, mind you, but by automobile.   *   *   *

"I therefore say, first of all, that there is no case against Trooper Skeels, that the sole and proximate cause of this accident was the driving of her husband; secondly, I can't see on those kind of injuries how she can be entitled to $82,000, $82,500 or whatever it is. It's a lot of money, but I suppose that's why we are here today. That's why we have to depend on a jury to give us an honest decision and unless this jury gives an honest decision, it will be a reflection on this community, members of the jury, that law and order is breaking down.   *   *   *

"Put yourself in Mrs. Morrison's position along the line of interest. Are you going to say to your husband, 'You are at fault. You hurt me.'? Is Mrs. Morrison going to do that or is she going to keep peace in the family and blame the trooper? That is a question you are going to have to answer when you are in the jury-room if you are going to, in my judgment, fairly decide this case."

The record pertaining to the claimed error of defendant's counsel of improperly injecting plaintiff's husband's case into the trial discloses the following:

(*Questioning by Mr. Crane.*)
"*Q.* Mr. Morrison, if I understood you correctly on direct examination this morning, you stated you were only shaken up in the accident?

"*A.* That is right.

"*Q.* You didn't go to a doctor, yourself?

"*A.* No.

"*Q.* You are, however, bringing a suit in your own name in the sum of $20,000?

"*By Mr. Collison:* Now,—

"*The Court:* I will sustain the objection.

"(Motion by plaintiff for mistrial.)

"*By Mr. Collison:* As a matter of fact, I'll move for a mistrial right in front of the jury at this point. I don't know how this error is going to be cured, but we discussed the subject of consolidation of the 2 actions, that there would be no reference to the other suit. I don't know,— (pause) Mr. Crane is well aware of that fact.

"*The Court:* Well,—

"*By Mr. Crane, continuing:* I'm well aware of the fact that—

"*The Court, continuing:* All right, let's not talk any more. The jury will be taken out, please."

A cautionary instruction was given the jury by the court as requested by plaintiff's counsel as follows:

"Now, members of the jury, I charge you that you are to disregard the fact that Frank J. Morrison has a suit pending against the defendant, Skeels, in his own name. For various reasons his case must be separately determined inasmuch as different legal principles and different elements of damages are present. I therefore instruct you that you are to determine only the issues between Lorraine Morrison and the defendant, Charles Skeels, according to the law as I have given it to you."

Plaintiff asserts that there was only one issue to be determined in the trial of the case, *i.e.,* whether defendant was guilty of negligence that was a proximate cause of the accident and resulting injuries to plaintiff. It is the further claim of plaintiff that by injecting false or collateral issues in the case by defendant, she was denied a fair trial. We agree with plaintiff that there was no issue raised in the pleadings or the evidence of police brutality or as to whether law and order is breaking down. Also, there was no issue in the case concerning hospital liability to plaintiff. It is plaintiff's further claim that in view of the fact that the riots in Detroit and other cities in Michigan were taking place at the very time of trial, references in defendant's argument to police brutality and the question of law and order breaking down were prejudicial and could not be cured by cautionary instruction.

It is likewise the claim of plaintiff that the questions put by defense counsel to Mr. Morrison concerning his injuries or lack of injuries and the amount of his claim in a separate lawsuit against defendant of $20,000 were prejudicial and could not be cured by the cautionary instruction given by the court at plaintiff's request. We are constrained to rule that this claimed error, if standing alone, was cured by the quoted cautionary instruction given

by the court as requested by counsel. However, we do consider it in ruling on whether, taking the whole record into consideration, a new trial should be granted.

In reading the record of the closing arguments, it appears that plaintiff's counsel, believing that defendant's counsel had greatly exceeded proper argument, proceeded to retaliate in his final argument and by so doing compounded error on error by stating in part as follows:

"We are not claiming any police brutality in this case. What he has done in this case, he is trying to take every extrinsic fact that he can find not material to the issues involved in this case and jam them down your throat. It sounds, if you believe his argument, like the trooper, Defendant Skeels, wasn't even at the accident scene. Now this shows you the attitude of the powers to [*sic*] be in this case that I have had to contend with since 1964 since I started representing this woman who was certainly injured in this automobile accident. * * * Let me say this, in all my life, and in the lives of my children, I have been taught to respect the authorities, and I am teaching that to my children, and I do respect police authorities, but don't decide this case that this woman has been waiting for, and she has waited for this day for 4-1/2 years, don't decide it on collateral issues that Mr. Crane is attempting to interject in this case, what—where he is referring to the riots in Detroit, Saginaw, perhaps, that we had last night, the fact that the police are involved in this. * * *

"Mr. Crane said he is proud of his driving record and so forth. He didn't tell you he got the side of his car scraped last week, but not too long before that he himself got a ticket for—(*Mr. Crane and Mr. Collison overlapping.*) You had your chance to talk, Mr. Crane, it's mine now.

*"The Court:* Gentlemen,—

*"By Mr. Crane:* You brought this in. My son was driving the car. (*Mr. Collison and Mr. Crane overlapping.*) The insurance company on the other side said to take it to Garber's and get it fixed.

*"The Court:* Let's go ahead with this case. Forget about this other.

*"By Mr. Collison, continuing:* Don't charge Mr. Crane with that, then."

Two wrongs can never make a right. Justice requires that both litigants receive a fair and impartial trial. Both attorneys injected foreign issues in the case. Plaintiff's counsel even brought into argument defendant's counsel's recent accident following which a statement was made as to what was purportedly said by an insurance company. In *Baker* v. *Alt* (1965), 374 Mich 492, 497, Mr. Justice O'HARA states:

"We do not here dilute the doctrine, which is our settled law under the cases cited by appellant, that the injection of an issue into a case not properly present under either the pleading or the evidence is reversible error."

The instant case can be distinguished from the cases of *Koepel* v. *St. Joseph Hospital* (1968), 381 Mich 440 and *Kujawski* v. *Boyne Mountain Lodge, Inc.* (1967), 379 Mich 381. In *Koepel, supra,* the error claimed was argument concerning the fact that an operating table had been subpoenaed to be produced in court. It involved a pleading in the proceedings. The error could have been cured by a requested instruction or a search of the record which would have disclosed that the subpoena was not served on the proper person who had the authority to produce the operating table. In *Kujawski, supra,* a similar question was presented where error was claimed by defendant when plaintiff's

counsel in his final argument asserted that plaintiff had earned $11,000 per year. The record did not substantiate this claim. Likewise, this involved argument as to evidence produced in the trial which could have been cured by a corrective instruction or a search of the record as to the facts pertaining to the claimed error.

In the instant case we are confronted with foreign issues, *i.e.*, police brutality, breakdown of law and order, and liability of the hospital to plaintiff, none of which were in the pleadings or evidence.

The defendant's counsel's actions in injecting these foreign issues were willful and not inadvertent. There is no room in this case for a supposition that defense counsel may have spoken under a mistaken, wishful misapprehension of the record.

Likewise, we find plaintiff's counsel asserting in his final argument the driving record of defendant's counsel including an accident attributed to him recently following which a statement was made as to what an insurance company had said concerning the responsibility for the accident. These issues were not in the pleadings nor in the evidence and were willfully, not inadvertently, injected.

The rule stated in *Sauve* v. *Carling Brewing Company, Inc.* (1965), 374 Mich 487 is applicable. We reiterate herein that the prejudicial misconduct of both counsel before the jury denied both parties a fair trial. Under the atmosphere and circumstances present in the instant case, we find that cautionary instructions would not have cured the prejudicial error. *People* v. *Osborn* (1919), 205 Mich 531, 536, and case cited therein.

Reversed. Instructions for an immediate retrial are the same as ordered in *Sauve* v. *Carling Brewing Company, Inc., supra.* Costs of this Court to be awarded the prevailing party upon new trial.