## LAPASINSKAS *v.* QUICK

1. MOTIONS—MOTION IN LIMINE—NEGLIGENCE.

   Motion *in limine* by two-year-old plaintiff which requested an order directing defendants and their counsel, to refrain from any reference, suggestion, statement, testimony, argument or insinuation charging or implying negligence on the part of plaintiff's father or any other person as constituting negligence interfering with or limiting damages recoverable was proper where the child's action was being tried separately from a similar action by his father.

2. TRIAL—ACTION BY CHILD—PARENTAL FAULT—IMPROPER INJECTION OF ISSUE—NEW TRIAL.

   The studied injection by defense counsel into a child's negligence action of the subject of parental fault, contributory or otherwise, constituted reversible error requiring a new trial, even though the trial judge instructed the jury, "whether the father used sufficient care watching the children or keeping the child close to him or instructing the child has nothing to do with this case," since the Court of Appeals has no way of knowing whether the defendant's injection of this issue influenced the jury or whether the trial judge's cautionary instruction in fact removed any defect adverse to plaintiff's claim and since the Court of Appeals cannot say that the verdict of no cause of action might not have been different had this prejudicial issue not been adverted to by the defendants.

3. WORDS AND PHRASES—MOTION IN LIMINE—DEFINITION.

   A motion *in limine* is a motion, heard in advance of jury selection, which asks a court to instruct the defendant, its counsel

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  37 Am Jur, Motions § 3.
   53 Am Jur, Trial § 11.
[2, 4]  38 Am Jur, Negligence §§ 240, 241.
   53 Am Jur, Trial §§ 458, 459.

and witnesses not to mention certain facts unless and until permission of the court is first obtained outside the presence and hearing of the jury.

4. TRIAL—PREJUDICIAL MATTERS.

The practice of calculated and unwarranted introduction before a jury of matters of prejudice should be stopped equally promptly whether a plaintiff or a defendant is the culprit.

Appeal from Wayne, Blair Moody, Jr., J. Submitted Division 1 April 9, 1968, at Detroit. (Docket No. 3,322.) Decided June 25, 1969.

Complaint by John Lapasinskas, next friend of Frank Lapasinskas, a minor, against Gary Quick and Earl Quick, jointly and severally, for injuries sustained by Frank Lapasinskas when he was struck by an automobile. Judgment for defendants. Plaintiffs appeal. Reversed and remanded for a new trial.

*Kenneth J. Morris* and *Dann, Rosenbaum, Bloom & Kaufman* (*Henry A. Krolik*, of counsel), for plaintiff.

*Rouse, Selby, Webber, Dickinson & Shaw* (*Thomas H. Cannon*, of counsel), for defendants.

BEFORE: HOLBROOK, P. J., and LEVIN and PRATT,* JJ.

LEVIN, J. Plaintiff Frank Lapasinskas was struck by a motor vehicle operated by the defendant Gary Quick and owned by the defendant Earl Quick. He appeals from a denial of his motion for new trial following a jury verdict of no cause of action.

At the time of the accident Frank Lapasinskas was two years of age. His cause of action and his

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

father's separate cause of action were both stated in one complaint. The defendants' answer asserted as an affirmative defense that the accident was caused by the child running out from behind parked cars into the defendant's vehicle and that the father was negligent in failing to keep his son off the street.

The Lapasinskases moved to strike that defense, for separate trials and for an order "directing defendants and their counsel, to refrain from any reference, suggestion, statement, testimony, argument or insinuation charging or implying negligence on the part of plaintiff John Lapasinskas [the father] or any other person as constituting negligence, guarding [*sic*], interfering with or limiting damages recoverable in this action." The motion asserted that any attempt to introduce evidence on the subject of defendants' affirmative defense "will be highly prejudicial to the claims of each of said plaintiffs and will do serious and irreparable damage notwithstanding any possible instructions from the trial court."

The trial judge ordered separate trials and that the claim of the child Frank be tried first. Subsequently, he filed an opinion striking the affirmative defense insofar as it related to the child's case. In the same opinion, the judge denied the request "that an order be entered in the case of the minor, directing the defendants and counsel to refrain from making any suggestion, any testimony and any argument of alleged negligence on the part of John Lapasinskas [the father] * * * . The Court will expect that counsel and parties will follow the law with respect to the introduction of such evidence and in argument. If during the course of the trial objectionable material is attempted to be submitted, counsel for the plaintiff at that time may make appropriate objection."

At the trial the defendants' attorney asked the court to inquire of the jurors whether they had explained to their children how to cross the street. During his opening statement he remarked, "It is very interesting. The boy's father was across the street in this area here somewhere. They say it's Gary's [the driver's] fault. Apparently this boy had a habit of running back and forth" at which point objection was made by the plaintiff's counsel. In his closing argument defendants' counsel referred to the fact that the child's father was only a short distance from him and that he was supposed to be watching the child ("Yeh, I'll watch Frankie") but that he had not been very attentive as the last time he saw Frankie was eight minutes before the accident. ("This is the father who is watching Frankie. He didn't see him for eight minutes.") At the conclusion of his argument he reiterated the impermissible innuendo ("I will ask you something: If this situation is that dangerous, what should the father have done? If anybody, it seems to me, if anybody would ask anybody whose fault the accident is") at which point argument was broken off by plaintiff's objection which was sustained by the court.

In instructing the jury, the trial judge cautioned that "whether the father used sufficient care watching the children or keeping the child close to him or instructing the child has nothing to do with this case."

Despite the just quoted cautionary instruction, we think this case must be reversed and a new trial ordered because "the studied injection into this child's case of the subject of parental fault, contributory or otherwise, constitutes reversible error." *Elbert* v. *City of Saginaw* (1961), 363 Mich 463, 482, per BLACK, J., concurring.

The defendants were represented by experienced counsel who knew better than to inject the issue of the father's negligence. Yet he deliberately and skillfully injected this impermissible argument. *Cf. Felice* v. *Weinman* (1964), 372 Mich 278, 280.

The plaintiff did what he could to protect himself. Anticipating the very argument that was made, he had sought the court's protection by motion in the nature of a motion *in limine*.[1] The plaintiff's action in seeking the court's protection before the objectionable evidence was introduced was "eminently proper." *McCullough* v. *Ward Trucking Company* (1962), 368 Mich 108, 114. In *McCullough* the plaintiff requested that the trial court rule that the defendant's counsel was not to make any reference in the presence of the jury to the fact that the plaintiff was eligible for workmen's compensation insurance benefits. The trial judge agreed with the plaintiff that the defendant should not introduce the subject but refused to rule it out in advance of the matter coming up at the time of trial. In an opinion in which two other justices joined,[2] Mr. Justice BLACK criticized the failure of the trial judge to prevent

---

[1] "[A] motion, heard in advance of jury selection, which asks the court to instruct the defendant, its counsel and witnesses not to mention certain facts *unless and until permission of the court is first obtained outside the presence and hearing of the jury.* \* \* \*

"If prejudicial matters are brought before the jury, no amount of objection or instruction can remove the harmful effect, and the plaintiff is powerless unless he wants to forego his chance of a trial and ask for a mistrial. Once the question is asked, the harm is done. Under the harmless error rule many of these matters would probably not be reversible error even though they have a subtle but devastating effect upon the plaintiff's case.

"Perhaps the greatest single advantage to a motion *in limine* is not having to object in the jury's presence to evidence which is 'logically relevant.' Jurors cannot be expected to understand why they should not be allowed to consider *all* evidence which is related to the case, and will usually resent the fact that an objection kept them from hearing it." (Emphasis by author.) Davis, Motions in Limine, 15 Clev -Mar L Rev 255, 256 (1966).

[2] The other 5 justices signed opinions which made it unnecessary for them to consider this aspect of the matter.

the introduction before the jury of the inadmissible[3] and prejudicial subject of workmen's compensation benefits (pp 114, 115):

"The practice followed by plaintiff, prior to swearing of the jury and at chambers, was eminently proper. See *Ruediger* v. *Klink* (1956), 346 Mich 357, 372. The trial judge's sound ruling of inadmissibility considered, the result should have been an order that defendants, desiring as they said to make a record of the claimed right 'to go into the workmen's compensation angle in this case,' should proceed to make an offer of the proposed proof at chambers under Court Rule No 37, § 15 (1945). Instead, the trial judge said that if counsel could not agree 'to abide by the announced advance ruling of the court,' that 'the matter should be raised at the trial by questions propounded and objection made and ruling obtained therein.' Thus the injecting question was asked, the objection was made, and the advance ruling of inadmissibility was repeated, all in the presence of the jury.

"If it is proper—and it is—for defense counsel to seek at chambers an advance ruling of suppression when a plaintiff's counsel proposes without disclosed right to inject the subject of the defendant's insurance coverage, so is it proper for a plaintiff to seek such ruling of suppression when his opponent proposes without disclosed right to inject the subject of payment of compensation or availability of compensation, when the action is brought under the auspices of the 1952 amendment (CLS 1956, § 413.15 [Stat Ann 1960 Rev § 17.189]). *This practice of*

[3] In *McCullough* a majority of the Court did not hold that evidence of workmen's compensation benefits was inadmissible. Later, in *Leitelt Iron Works, for use and benefit of Michigan Mutual Liability Company,* v. *De Vries* (1963), 369 Mich 47, 57, the Court ruled that the fact and extent of such benefits could not be mentioned before the jury. See *Hill* v. *Harbor Steel & Supply Corporation* (1965), 374 Mich 194, 214, and discussion in the separate concurring opinion of Mr. Justice O'HARA, pp 220, 221. See, also, *Kemp* v. *Mutual of Omaha Insurance Company* (1965), 375 Mich 359, 366.

*calculated and unwarranted introduction before the jury of like matters of prejudice should be stopped quite as promptly whether a plaintiff or a defendant is the culprit."* (Emphasis supplied.)

We have no way of knowing whether the defendants' injection of this issue influenced the jury or whether the trial judge's cautionary instruction in fact removed any effect adverse to plaintiff's claim. See *Clark* v. *Grand Trunk W. R. Co.* (1962), 367 Mich 396, 402; *cf. Felice* v. *Weinman, supra.* We cannot say that the verdict in this case might not have been different had this prejudicial issue not been adverted to by the defendants. Under the circumstances of this case, where the plaintiff sought to protect himself and the defendants, nevertheless, insisted on injecting this impermissible issue, we think it proper to visit upon the defendants the burden of a new trial during which the issue of the father's negligence shall not be referred to by innuendo or otherwise.[4]

The plaintiff also asserts that the trial judge erred in allowing a police officer to testify on the basis of a report which he himself did not prepare. In denying plaintiff's motion for a new trial, the judge ruled that since the record did not clearly reflect that this officer was at the scene it may have been a report not derived from his experience and, therefore, may have been inadmissible. The judge went on to

---

[4] Cf. *Morrison* v. *Skeels* (1969), 16 Mich App 727; *Sauve* v. *Carling Brewing Co.* (1965), 374 Mich 487, 491; *Ward* v. *Reed* (1903), 134 Mich 392, 394; *Remey* v. *Detroit* (1905), 141 Mich 116, 124; *Antosik* v. *Michigan Alkali Co.* (1911), 166 Mich 415, 420; *Rauhala* v. *Maki* (1912), 172 Mich 112, 119, 120; *Layton* v. *Cregan & Mallory Co., Inc.* (1934), 269 Mich 574, 583; *In re Widening of Woodward Ave.* (1941), 297 Mich 235, 246. That cautionary instructions may not be thought to have cured prejudicial statements and, therefore, the failure to request a cautionary instruction may not preclude relief on appeal, see *Steudle* v. *Yellow Checker Cab & Transfer Co.* (1938), 287 Mich 1, 11–13; *Hatten* v. *Bane* (1969), 16 Mich App 10, 13–15; *Clark* v. *Grand Trunk W. R. Co.* (1962), 367 Mich 396, 400–402.

rule, however, that because of other evidence any error was not prejudicial. On the retrial the facts, no doubt, will be developed more clearly and the admissibility of the officer's testimony made to appear before he is permitted again to testify in the presence of the jury.

Reversed and remanded for a new trial.

Costs to plaintiff.

All concurred.