## KAKLIGIAN v HENRY FORD HOSPITAL

### DECISION OF THE COURT

1. NEGLIGENCE—REGULATION VIOLATIONS—HOSPITALS—INSTRUCTIONS TO JURY.

   Violations of a regulation promulgated pursuant to statutory authority are evidence of negligence; the trial court in a malpractice action against a hospital erred in refusing to give a requested jury instruction that, if they found that the defendant hospital violated a Michigan Administrative Code Rule requiring hospitals to have a written policy denoting when consultation should be held, such violation is evidence of negligence which they should consider, along with all the other evidence, in deciding whether the defendant hospital was negligent where there was ample evidence before the jury to show that there was no hospital policy denoting when consultation should be held.

### OPINION OF V. J. BRENNAN, J.

2. NEGLIGENCE—TRIAL—COUNSEL'S ARGUMENTS TO JURY—PREJUDICE.

   *A plaintiff in a malpractice case is entitled to a new trial where defendants' counsel stated in opening and closing arguments that the purpose of the suit was revenge because the reason the suit was brought is irrelevant, the matter of revenge was injected for the sole purpose of appealing the jury's bias and prejudice, and no instruction could cure the prejudice.*

3. EVIDENCE—TRIAL—REDIRECT EXAMINATION—DISCRETION.

   *Admission of evidence on redirect examination, properly a part of the case-in-chief, rests in the discretion of the trial court.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Negligence § 261.
[2] 57 Am Jur 2d, Negligence § 454.
[3] 20 Am Jur 2d, Courts § 218.
[4] 57 Am Jur 2d, Negligence § 75.
[5] 39 Am Jur 2d, Health §§ 1–8.

4. NEGLIGENCE—MEDICAL MALPRACTICE—EVIDENCE—PROPER STAN-
DARD OF CONDUCT.

   *It was error in a malpractice action to sustain the defendants'
   objection to plaintiff's redirect-examination questioning as to
   what an expert witness would do when faced with the situation
   where pathologists might differ where defendants' counsel, in
   cross-examining the witness, had brought out the fact that
   pathological diagnosis is by no means a certainty, because the
   standard of practice in this uncertain science regarding what a
   pathologist would do prior to making a diagnosis was most
   relevant to the issue of the proper standard of conduct.*

5. HEALTH—STATE HEALTH COMMISSIONER—AUTHORITY—STATUTES.

   *The statute granting authority to the State Health Commissioner
   to make and declare rules and regulations for the proper
   safeguarding of the public health was intended by the Legisla-
   ture to grant two types of authority to regulate: (1) authority to
   safeguard public health, and (2) authority to impose standards
   for maintenance and operation and to inspect whenever certain
   Federal requirements would apply (MCLA 325.7).*

Appeal from Wayne, Thomas Roumell, J. Sub-
mitted Division 1 November 13, 1972, at Detroit.
(Docket No. 12505.) Decided July 23, 1973.

Complaint by Markar Kakligian, for himself and
as administrator of the estate of Patricia Kakli-
gian, against Henry Ford Hospital and others for
damages for medical malpractice. Verdict and
judgment for defendants. Plaintiff appeals. Re-
versed in part and remanded for a new trial.

*Donald G. Schiff,* for plaintiff.

*Kitch & Suhrheinrich, P. C.,* for defendants.

Before: LEVIN, P. J., and V. J. BRENNAN and
O'HARA,* JJ.

V. J. BRENNAN, J. Plaintiff herein appeals from

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

a jury verdict of no cause of action against defendants Henry Ford Hospital, David Mitchell, Jr., M.D., Leslie Mitchell, M.D., and Harold Frost, M.D.; dismissal of the action against R. C. Horn, M.D., Gerald Fine, M.D., and Roy Patton, M.D.; and a directed verdict of no cause of action against Joseph Benninson, M.D. Plaintiff does not appeal a directed verdict in favor of James A. Amlicke.

Plaintiff's wife died of cancer on June 14, 1966. She was employed as a registered nurse by defendant hospital. She had first sought treatment from Dr. David Mitchell at Ford Hospital in April, 1964, for pain and swelling in her left ankle. A lengthy series of treatments followed, attempting to discover the cause of her symptoms. In December, 1965, a biopsy resulted in a diagnosis of Rhabdomyosarcoma, a cancer, in the left foot.

During the 20-month interval between the first treatment and the final diagnosis of cancer, several tentative conclusions were made and treatment was prescribed as a result. When the symptoms did not abate, the first of four biopsies was made. A lesion developed which did not heal. Mrs. Kakligian was also treated at her own request by Drs. Benninson and Frost. No cancer was diagnosed, but Dr. Frost was at least suspicious of its presence.

A third biopsy done on December 13, 1965, was diagnosed as Rhabdomyosarcoma. Further tests indicated that the cancer had not spread and Mrs. Kakligian's leg was amputated above the knee on January 3, 1966.

I.

Was there serious prejudice to plaintiff's cause by defendants' opening statement during which

counsel claimed that "this lawsuit is started for one thing and one thing only and that is for revenge, and not for anything else".[1] Plaintiff interposed no objection.

Plaintiff argues that any mention of revenge as a motive to the suit was highly improper since that issue was not properly before the court at trial. No remedy could be had which would end the prejudice in the minds of the jurors. Indeed, from the record it appears that plaintiff's counsel spent much time attempting to undo the damage. Later, on cross-examination of the plaintiff, defense counsel developed the contents of a letter threatening the life of Dr. David Mitchell and responded to an objection by arguing that the question was relevant because he had raised it in his opening statement. The trial judge allowed plaintiff's statement in because, he said, "I would imagine it is important to your defense".

Again in closing, defendants' counsel hammered home the vengence-revenge motive of the plaintiff. Plaintiff's counsel interposed vociferous objection and a portion of defendants' closing argument was struck. The trial court gave no cautionary instruc-

---

[1] In context the defense counsel's opening remark was:

"I am going to show you, ladies and gentlemen, that this lawsuit is started for one thing and one thing only and that is for revenge, not for anything else.

"On July 28, 1966, Mr. Kakligian wrote a letter to Doctor David Mitchell and I think you have heard both statements and you have heard his total contact with this patient. The letter states: Remember this, I intend to extract two things from you, one, revenge and two, the protection of other people's bodies from your slimy hands.

"We are here today, ladies and gentlemen, for vengeance, not for malpractice.

"When you have heard all the testimony and I want you to pay particular attention to judgment—that's what these physicians had to exercise—if the worse that can be stated for them is that they made a mistake in judgment, I think you will get instruction and I will ask that you bring back a no cause for action for all of the defendants and the hospital involved.

"Thank you."

tion. Indeed, at this late juncture no instruction could cure the prejudice.

Why the suit was brought is irrelevant. We conclude that defendants' attorney injected the matter of revenge for the sole purpose of appealing to the jury's bias and prejudice. Plaintiff is entitled to a new trial. *Morrison v Skeels,* 16 Mich App 727; 168 NW2d 644 (1969); *Lapasinskas v Quick,* 17 Mich App 733, 739; 170 NW2d 318, 320–321 (1969).[2]

## II.

Did the trial court err reversibly when it sustained a defense objection to a question by plaintiff on redirect examination in regard to what a proper standard of practice would be for a pathologist? As a general rule admission of evidence on redirect examination, properly a part of the case-in-chief, rests in the discretion of the trial court. *Detroit & Milwaukee R Co v Van Steinberg,* 17 Mich 99 (1868); *Gilchrist v Mystic Workers of the World,* 196 Mich 247; 163 NW 10 (1917).

When defendants' counsel cross-examined Dr. Goldman, it was brought out that pathological diagnosis is by no means a certainty. After some

---

[2] We are particularly influenced by the soundness of the opinion of Judge LEVIN in *Lapasinskas,* and commend it to the Bar:

"We have no way of knowing whether the defendants' injection of this issue influenced the jury or whether the trial judge's cautionary instruction in fact removed any effect adverse to plaintiff's claim. See *Clark v Grand Trunk W R Co,* 367 Mich 396, 402; 116 NW2d 914, 917–918 (1962); cf *Felice v Weinman* [372 Mich 278, 280; 126 NW2d 107–108 (1964)]. We cannot say that the verdict in this case might not have been different had this prejudicial issue not been adverted to by the defendants. Under the circumstances of this case, where the plaintiff sought to protect himself and the defendants, nevertheless, insisted on injecting this impermissible issue, we think it proper to visit upon the defendants the burden of a new trial during which the issue of the father's negligence shall not be referred to by innuendo or otherwise."

redirect and further recross-examination, plaintiff's counsel asked the doctor what he would do when faced with a situation where pathologists might differ. Defense counsel objected and he was sustained by the trial court. The standard of practice in this uncertain science regarding what a pathologist would do prior to making a diagnosis was most relevant to the malpractice issue. The issue of a proper standard of conduct was before the jury and should have weighed heavily in the case. It was error to sustain defendants' objection because the question put was properly part of the redirect examination. See *Facer v Lewis,* 326 Mich 702; 40 NW2d 457 (1950); *Miles v Van Gelder,* 1 Mich App 522; 137 NW2d 292 (1965).

## III.

Did the trial court err in refusing to give Standard Jury Instruction 12.07? Plaintiff had alleged that defendant Ford Hospital had violated Rule 325.1027(7.12) of the Michigan Administrative Code which requires:

"There shall be a written hospital policy denoting when consultation should be held. Consultation shall be recorded." Administrative Code 1960 AACS, R 325.1027(7.12).

The State Health Commissioner, with the concurrence of the State Council of Health, is given statutory power to make and declare rules and regulations in accordance with the laws of the state for the proper safeguarding of the public health. MCLA 325.7; MSA 14.7.[3]

---

[3] "Sec. 7. With the concurrence of the state council of health, any 3 of whom shall constitute a quorum, the state health commissioner may make and declare rules and regulations in accordance with the laws of the state for the proper safeguarding of the public health and

Defendants contend, erroneously, that the rule promulgated by the commissioner and council (Rule 325.1027[7.12]) was not intended to benefit the deceased. Rather, defendants claim, the rule was merely intended to qualify hospitals within the state for certain Federal aid and programs.

Our reading of the statute convinces us that the Legislature intended two types of authority to regulate: (1) authority to safeguard public health, and (2) authority to impose standards for maintenance and operation and to inspect whenever certain federal requirements would apply. It is only the latter types of regulations to which the proviso:

" * * * That said standards shall not be construed so as to authorize any regulation of the medical or surgical personnel within said hospitals."

See 2 OAG, 1957–1958, No 3283, p 268 (October 17, 1958).

Standard Jury Instruction 12.07, like 12.05, is applicable only where:

---

for preventing the spread of diseases, or the existence of sources of contamination. When necessary to conform to the requirements of the federal government in regard to the payment of old age assistance, aid to the blind, or aid to the disabled for the purpose of insuring the maximum amount of federal subsidy under these programs, the state health commissioner shall establish and enforce reasonable standards of maintenance and operation for all hospitals within the state; shall define a hospital; shall make or cause to be made periodic inspections for the purpose of determining which hospitals have complied with such standards, and shall annually certify to the Michigan department of social welfare a list of all hospitals which have complied with said standards: Provided, That said standards shall not be construed so as to authorize any regulation of the medical or surgical personnel within said hospitals: And provided further, That the authority hereby conferred on said health commissioner shall not extend to any hospitals which are responsible to any other authority, department or agency of this state charged with establishment and maintenance of standards for any such hospital or hospitals. Such rules and regulations shall be published in such manner as may be directed by the advisory council of health."

"(1) the ordinance [rule] was intended to protect against the injury involved; (2) the plaintiff is within the class intended to be protected * * * ; and (3) * * * the violation was the proximate cause of the injury involved." SJI 12.05, Note on Use.

Violations of a regulation promulgated pursuant to statutory authority are evidence of negligence. *Douglas v Edgewater Park Co,* 369 Mich 320; 119 NW2d 567 (1963); *Juidici v Forsyth Twp,* 373 Mich 81; 127 NW2d 853 (1964). Ample evidence was before the jury to show that there was no hospital policy denoting when consultations should be held. The plaintiff's case against Ford Hospital is largely based on an alleged defect in hospital procedure, independent of the accuracy of treatment. See *Abbe v Woman's Hospital Association,* 35 Mich App 429; 192 NW2d 691 (1971); *Dyke v Richard,* 40 Mich App 115; 198 NW2d 797 (1972). The requested instruction should have been given.[4]

Plaintiff's other allegations of error are not sufficiently substantial to merit further discussion, or are unlikely to recur on retrial.

As to the dismissal of the action on a conspiracy count against Doctors Horn, Fine, and Patton, the trial court is affirmed.

Plaintiff is granted a new trial, no costs, neither party prevailing.

O'HARA, J. *(concurring in result).* I agree with Judge BRENNAN that plaintiff should be granted a new trial on the record before us. I write sepa-

___

[4] The requested instruction was:

"If you find that the defendant hospital violated this regulation before or at the time of this occurrence, such violation is evidence of negligence which you should consider, together with all the other evidence, in deciding whether defendant hospital was negligent. If you find that the defendant hospital was negligent, you must then decide whether such negligence was a proximate cause of the damage to the plaintiff."

rately for the reason that I do not completely subscribe to all the views expressed by my colleague.

For decisional purposes, I hold simply that the trial judge committed reversible error when he refused to charge the jury pursuant to Standard Jury Instruction 12.07. I also agree that the conspiracy count should have been dismissed. I concur in the grant of a new trial and agree no costs should be taxed.

LEVIN, J., did not participate.