MORGAN v. ENGLES.

1. PHYSICIANS AND SURGEONS—CARE AND SKILL REQUIRED.

A general practitioner of medicine and surgery, or other schools of healing, who, in the exercise of the care and skill demanded by those requirements, discovers or should know or discover, that the patient's ailment is beyond his knowledge or technical skill, or ability or capacity to heal with a likelihood of reasonable success, is under a duty to disclose the situation to his patient, or advise him of the necessity of other or different treatment.

2. SAME—NEGLIGENCE—PROXIMATE CAUSE—BURDEN OF PROOF.

A plaintiff in a malpractice action in order to recover for the negligence of a physician, must show that such negligence was the proximate cause of the injury for which damages are sought.

3. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

Proofs and reasonable inferences therefrom must be viewed in the light most favorable to plaintiff on review of a directed verdict against plaintiff.

4. PHYSICIANS AND SURGEONS—FRACTURE OF HUMERUS—EPIPHYSIS.

Evidence presented in child's action against general practitioner for negligence in making on the day of the injury a closed reduction of a supracondylar, comminuted fracture of the humerus with displacement *held*, to show that defendant's failure to refer the case to an orthopedic specialist who would have discovered the epiphyseal injury from defendant's X rays and made an open reduction presented a question for consideration of the jury as to proximate cause.

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Physicians and Surgeons §§ 78, 79.
[2, 4] 41 Am Jur, Physicians and Surgeons § 78 *et seq.*
Proximate cause in malpractice cases. 13 ALR2d 11.
Malpractice: treatment of fractures or dislocations. 54 ALR2d 200.
[3] 5 Am Jur 2d, Appeal and Error § 886.

Appeal from Macomb; Spier (James E.), J. Submitted November 7, 1963. (Calendar No. 68, Docket No. 49,736.) Decided April 6, 1964. Rehearing denied May 6, 1964.

Case by John Morgan, a minor, by his next friend, Mary Morgan, against John Engles for malpractice. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Albert Lopatin* (*Norman L. Zemke,* of counsel), for plaintiff.

*Humphreys Springstun,* for defendant.

SMITH, J. This malpractice action was commenced by the mother as next friend of John Morgan, who, on June 17, 1958, while 4 years of age suffered a severe fracture of the left elbow. Defendant, a doctor of medicine, engaged in general practice in Richmond, Michigan, set the fracture on the day of injury.

The boy's injury was described by defendant as a supracondylar fracture of the humerus with displacement. It was a comminuted fracture, that is, having more than 2 fragments. The doctor set the fracture in a closed reduction, that is to say, without surgery. After recurrent trouble with the arm, several surgical operations, corrective in nature, were performed by a team headed by Dr. Drompp, an orthopedic surgeon. Pertinent to this review is plaintiff's claim, by way of allegation and testimony, that defendant's failure to refer plaintiff to an orthopedic specialist was contrary to accepted standards of practice in the community and, thereby, caused painful and permanent injury to plaintiff's arm. At the close of all proofs, the trial court directed a verdict in favor of defendant. From a denial of motion for new trial, plaintiff appeals. Defendant says, and we agree, that "the only real issue" on ap-

peal is "whether the trial court erred in directing a verdict for defendant in view of the state of the record at the close of the case." Defendant's claim, in support of affirmance, is that plaintiff failed to show any causal relation between the "failure to refer to a specialist" and the injury.

The rule is summed up in the annotation entitled "Duty of physician or surgeon to advise patient of the possibility or probability of better results from treatment by specialist or by a mode of treatment which he is not qualified to give." 132 ALR 392. It reads as follows:

"It may be stated as a general rule that, as a part of the requirements which the law exacts of general practitioners of medicine and surgery, or other schools of healing, if, in the exercise of the care and skill demanded by those requirements, such a practitioner discovers, or should know or discover, that the patient's ailment is beyond his knowledge or technical skill, or ability or capacity to treat with a likelihood of reasonable success, he is under a duty to disclose the situation to his patient, or advise him of the necessity of other or different treatment." Citing *Janssen* v. *Mulder,* 232 Mich 183 (25 NCCA 248), among other cases.*

It is obviously the law that in order to recover for the negligence of a physician, plaintiff must show that such negligence was a proximate cause of the injury for which damages are sought. *Bishop* v. *Shurly,* 237 Mich 76, *Ballance* v. *Dunnington,* 241 Mich 383 (57 ALR 262). See 59 ALR 884.

It is also applicable law that on review of a directed verdict against plaintiff the proofs and reasonable inferences therefrom must be viewed in the light most favorable to plaintiff. *Humenik* v. *Sternberg,* 371 Mich 667.

---

* See, also, The Law of Medical Practice, Shartel and Plant, § 3-12, p 124.

Plaintiff's expert witness, Dr. Vann, a doctor of medicine (not a specialist) licensed to practice in the State, testified that the fracture in question required major orthopedic procedures. In answer to a hypothetical question he stated that defendant had not acted according to the customary and usual practice of the ordinary careful and skillful practitioner in the same or similar localities. He said:

"That the usual and customary procedure of the average skillful general practitioner, or doctor, with that type of major orthopedic problem, he should call in a consultant, recognized orthopedic specialist, or work with him, or refer the patient to the orthopedic specialist for his care."

It is important to note that Dr. Vann's opinion as to defendant's negligence is predicated largely upon the complex nature of the fracture which included damage to the epiphysis or "growth center" of the elbow, as part of what already has been described as a supracondylar fracture. *Dr. Vann testified that an orthopedist would have discovered the epiphyseal damage,* treated the fracture by open reduction, and that, as a result the child likely would not have suffered the injury of which complaint is now made.

The following quote from the testimony of Dr. Vann seems significant to his hypothesis:

"Q. Doctor, is it your testimony then, that the standards of practice, medical practice of a community of Richmond, or similar communities, when a general practitioner runs into a fracture of the supracondyl, that this is an orthopedic problem and the standards of practice dictate he consult an orthopedic consultant before attempting to set this fracture?

"A. Yes, that is the usual procedure.

"Q. Doctor, are you familiar with the standards of medical practice wherein a fracture of the supracondyl also involves injury to the epiphysis?

"*A.* I am.

"*Q.* You are familiar with it?

"*A.* I am familiar with it and I have had some experience with it.

"*Q.* Doctor, does the standard of medical practice and treatment of a supracondylar fracture, is it the same where you have a fracture of the epiphysis and where you don't have a fracture of the epiphysis?

"*A.* No, it is not the same.

"*Q.* Does the standard of medical practice and treatment of such a fracture differ, doctor, and how?

"*A.* A fracture of a supracondylar bone is usually longitudinal, or transverse and *therefore damage is done to the epiphyseal plate and an open surgical reduction is performed* with the plate being tacked with noncorrosive pins.

"*Q.* The surgery is done by whom?

"*A.* An orthopedic surgeon." (Emphasis supplied.)

Dr. Vann concluded his opinion by saying that the failure to refer plaintiff to an orthopedist rather than the severity of the original injury (the latter being defendant's contention) was the cause of the alleged permanent injury to the boy's elbow.

Viewing, as we must, all testimony in a light most favorable to plaintiff, the following testimony of Dr. Drompp on cross-examination would seem to lend some support to plaintiff's view that epiphyseal damage would have been detected by an orthopedic specialist:

"*Q.* Doctor, going once again to the X rays, which you saw for the first time on October the 26, 1961, Dr. Engles' X ray, you could see on those X rays an epiphyseal injury, could you not?

"*A.* Yes—evidence of it. I could see evidence of epiphyseal injury."

At another point, Dr. Drompp explained in greater

detail what fractures were visible in X rays taken by defendant, Dr. Engles:

"In other words, we can say epiphysis, epiphyseal plate and that portion of the metaphysis that it joins and is responsible for the cell growth. In this age group, one cannot see the trochea. One cannot see the fracture in it, or its presence on the X rays. But one can see the fracture in the metaphysis, which is adjacent to the plate, or growth line and therefore one can say there is epiphyseal injury.

"When I say epiphyseal injury, it can be anything in that general area, on either side of the epiphyseal plate, or growth line.

"Does that clear it up for you?

"*Q.* Yes, I believe it does. Was this visible in the X rays?

"*A.* Yes, the fracture in the metaphysis is visible.

"*Q.* In the 2 X rays taken by Dr. Engles?

"*A.* Yes."

Also, on favorable view, we take note of the testimony of defendant himself who said that because of the severity of the fracture in such a young child he made a "mental note" of the possibility of epiphyseal damage. Defendant's contention, however, was that, even had he discovered epiphyseal damage, his treatment would have been the same.

According favorable view to the testimony of plaintiff's expert witness, Dr. Vann, it seems that jury questions were presented. Recapitulating, Dr. Vann testified that Dr. Engles violated the standard of practice in the same or similar communities by failure to refer plaintiff to an orthopedic specialist. His thesis was predicated upon the severity of the fracture which unquestionably included injury (damage) to the epiphysis or growth center of the elbow. His opinion was that an orthopedic specialist would have discovered this damage at the outset. That this might have been discovered by a specialist

may also reasonably be inferred from the testimony of Dr. Drompp.

As to defendant's strong contention that proximate cause was not shown, again, taking plaintiff's proofs on favorable view: although there is the usual disclaimer that perfect healing can never be guaranteed, Dr. Vann said the results would have been successful, in his opinion, had the child been referred to a specialist immediately. As to how this would have resulted, must be gleaned or inferred from his description of the usual practice for reducing a supracondylar fracture with epiphyseal injury, that is by open reduction and the insertion of noncorrosive pins. On favorable view, the evidence was sufficient to take to the jury.

Reversed and remanded. Costs to appellant.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, and O'HARA, JJ., concurred.

ADAMS, J., took no part in the decision of this case.