ABBE *v.* WOMAN'S HOSPITAL ASSOCIATION

1. PHYSICIANS AND SURGEONS—GENERAL SURGEONS—MALPRACTICE—
   STANDARD OF COMPETENCE—LOCAL COMMUNITY.

   A general surgeon is not held to the standard of professional
   competence which must be judged by the standard of specialists
   in specific areas of the practice of medicine; he is held to
   the standard of competence observed in his community or com-
   munities sufficiently similar to his community.

2. PHYSICIANS AND SURGEONS—MALPRACTICE—CONTRIBUTORY NEGLI-
   GENCE—INSTRUCTIONS TO JURY.

   No issue of contributory negligence was present in a malpractice
   action where no reference to, or claim of, contributory negli-
   gence was made; under such circumstances, an instruction
   cautioning the jury not to consider contributory negligence was
   properly not given.

3. PHYSICIANS AND SURGEONS—MALPRACTICE—CONTRIBUTORY NEGLI-
   GENCE—INSTRUCTIONS TO JURY.

   Plaintiff's apprehension that the jury might consider plaintiff's
   ignorance of the difference between an anesthetist and an
   anesthesiologist as contributory negligence in a malpractice
   action did not warrant an instruction cautioning the jury not
   to consider contributory negligence where no reference to, or
   claim of, contributory negligence had been made.

4. PHYSICIANS AND SURGEONS—MALPRACTICE—STANDARD OF COMPE-
   TENCE.

   Defendant general surgeon was not liable to a surgical patient
   on the ground that he did not explain the difference between
   an anesthetist and an anesthesiologist where there was no

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Physicians and Surgeons §§ 84–90.
[2, 3] 41 Am Jur, Physicians and Surgeons § 132.
[4] 41 Am Jur, Physicians and Surgeons § 129.
[5, 6] 41 Am Jur, Physicians and Surgeons §§ 129–131.

expert testimony that explaining the difference was a standard of professional competence observed in the defendant's community.

5. EVIDENCE — BUSINESS ENTRIES — HOSPITAL RECORDS — PATHOLOGIST'S REPORT.

A pathologist's report on the cause of death of a surgical patient was clearly admissible under the business entry act where the report had been made part of the hospital's records (MCLA §§ 600.2146 *et seq.*).

6. EVIDENCE—MEDICAL MALPRACTICE—PATHOLOGIST'S REPORT.

Refusing to admit pathologist's report, which showed findings of cerebral edema, hypoxia, hyperemia, and acute pulmonary edema was reversible error where there was testimony that the conditions were caused by lack of oxygen and could produce death, the plaintiff-administrator had pleaded in its malpractice action that death had been caused by the defendant hospital's failure to supply sufficient oxygen, plaintiff's counsel had sought the admission of the report so that the jury could have the report available during deliberation, the jury, early in its deliberation, had asked for all admitted exhibits, and the deliberation was lengthy, because if the crucial report had been admitted the verdict might have been different.

Appeal from Genesee, Anthony J. Mansour, J. Submitted Division 2 June 10, 1971, at Lansing. (Docket No. 8149.)  Decided August 23, 1971.

Complaint by Milton Abbe, administrator of the estate of Margaret Abbe, against Woman's Hospital Association for negligence and against Thomas Eickhorst for medical malpractice.  Judgments of no cause of action as to both defendants.  Plaintiff appeals.  Affirmed as to defendant Eickhorst; reversed and remanded for a new trial as to defendant Woman's Hospital Association.

*van Benschoten & van Benschoten,* for plaintiff.

*McAra & Palmer,* for defendant Woman's Hospital Association.

*Cline & Cline* (by *Earl J. Cline* and *Walter P. Griffin*), for defendant Thomas Eickhorst.

Before: DANHOF, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from two jury verdicts of no cause of action. Plaintiff is the personal representative of the estate of his deceased wife. The action was brought under the wrongful death act, MCLA § 600.2922 (Stat Ann 1971 Cum Supp § 27A.2922). As to defendant Eickhorst, an M.D., the action is what is commonly called malpractice. As to defendant hospital, it sounds in tort for the negligent performance of those duties owing a patient from a hospital.

The deceased, 26 years old, was a patient of defendant doctor. He did a biopsy of a lump on her breast. It was determined to be malignant. The doctor immediately performed a radical mastectomy. The operation was completed at 4:07 p.m. The decedent was taken directly to an operative recovery room. At 4:45 p.m., the operating surgeon examined her. It is disputed whether he came to the recovery room in response to a call to his home from the attending nurse, or whether he, in fact, came back on his own. In any event, the patient, who according to the record was, prior to the surgery, an otherwise healthy young woman, died at 3:03 a.m. the next morning without regaining consciousness.

On the day of the surgery, the doctor again came to the recovery room about 7:30 p.m. in the company of another physician. Again at about 9 p.m., he was back in the recovery room and left. About an

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

hour later the patient's blood pressure dropped dramatically. An intern was called, Dr. Eickhorst not being immediately locatable. By 11:20 or so, it became apparent that the patient's condition was rapidly deteriorating. A resident physician was summoned. As best we can determine from the record, Dr. Eickhorst was located soon thereafter and from midnight on he was with another physician at his patient's side until her death. A postmortem examination was conducted by a pathologist, who wrote up a report which became part of the hospital records. It was thereafter offered as an exhibit on trial. The judge, while permitting plaintiff's counsel to cross-examine the authoring pathologist concerning the report, refused to admit it as an exhibit. We set it forth as offered:

"*Final Aanatomic Diagnoses*
"1. Recent left radical mastectomy with sutured incision for carcinoma of left breast with left axillary lymph node metastasis (McLaren Hospital Surgical Pathology #S–67–5389).
"2. Cerebral edema and early changes of cerebral hypoxia.
"3. Acute pulmonary edema and hyperemia, marked.
"4. Struma lymphomatosa and small follicular adenoma (2 cm.) of thyroid.
"EGM/pc.
"*Cause of Death:*
"See above anatomic diagnoses.
                              "E. G. Murphy, M.D.
                              "Pathologist

*       *       *

"*Microscopic Examination*

*       *       *

"*Brain:* Sections of the brain show early histologic changes, most notable in the cerebral cortex.

Grossly, there was slight to moderate edema and microscopically there would appear to be slightly decreased density of the finely fibrillar background of the cerebral cortex. It is noted that there is slight swelling of cytoplasm of some astrocytes.

\*    \*    \*

"The early changes noted in the cerebral cortex are consistent with changes due to hypoxia of whatever etiology.

"*Comment:* Although the histologic alterations present in the cerebral cortex are consistent with early changes due to hypoxia, there is nothing specific present to indicate the etiology of the apparent hypoxic changes. Possibly only a careful review of the clinical events and course of the patient can afford an adequate explanation.

"EGM/pc.

"E. G. Murphy, M.D.
"Pathologist"

Before we discuss the issue of the admissibility of the foregoing, and the effect of the ruling barring its admissibility, we deem it advisable to dispose of certain other issues.

In all, plaintiff specified 16 assignments of error. Some are identical as to both defendants. Some are limited to one or the other. Some do not specify as to which defendant the claimed error applies. We have examined them with extreme care. The fact that we do not write separately as to each one should not suggest that we have not considered them.

We dispose of the assignments of error as to defendant Eickhorst as follows: he is what may be designated as a general surgeon. He does not fall within the category which must be judged by the standard of specialists in specific areas of the practice of medicine. Rather, his liability must be determined on the basis of any deviation from the standard of professional competence, and the exer-

cise thereof, in his community or communities suffi-
ciently similar thereto to constitute a proper basis
for the expression of qualified expert opinion testi-
mony as to that standard. The Supreme Court
spoke to this question in *Lince* v. *Monson* (1961),
363 Mich 135. In this case, as in *Monson*, "There
was no medical testimony that defendants' treat-
ment and handling of the case was not in accord
with the standard and usual practice of skilled
doctors in the community". (*Monson, supra,* p 139.)

A number of the claims of error relate to asserted
liability of the doctor for acts which were in fact
performed by the hospital through its employees.
We decline to accept plaintiff's proffered premise
of the doctor's vicarious liability growing out of a
sort of agency concept between the doctor and the
hospital.

Plaintiff requested an instruction as to contribu-
tory negligence. We do not agree with his conten-
tion that he was entitled to the requested instruction
"to remove from your deliberations any considera-
tion of any fault, negligence, or contributory negli-
gence on the part of either Milton Abbe or his wife
Margaret Abbe * * * ".

Part of the basis for the instruction as briefed
by plaintiff rested upon his apprehension that the
jury, and we quote the brief, "might have thought
that it was awfully dumb" that neither of them knew
the difference between a nurse anesthetist and an
anesthesiologist.[1] In support of the request, plain-
tiff relies on *Podvin* v. *Eickhorst* (1964), 373 Mich
175. The reliance is misplaced. In that case two
defense counsel, in their opening statements, "re-
ferred to plaintiff's automobile accident in terms
which openly invited the jury to find that his (plain-

---

[1] In the unlikely event that the Bar and Bench do not know, we
note that an anesthesiologist is an M.D. specializing in anesthetics.

tiff's) injuries were attributable *solely* to his own fault". (*Podvin, supra,* p 181, emphasis supplied.) It seems obvious to us that that case is clearly distinguishable from this case, in which no reference to, or claim of, contributory negligence was made. There was no issue as to contributory negligence in the case at bar.

We also reject the claim that the doctor was negligent in failing to explain the difference between a nurse anesthetist and an anesthesiologist. This claim was unsupported by testimony as to the prevailing practice by which defendant was to be judged.

In sum total, the case against the doctor was ably and vigorously presented. It was likewise ably and vigorously defended. The issues were properly submitted to the jury. We find no basis upon which to disturb that verdict.

We now consider the case against the defendant hospital. We find one claim of error to be well-founded and decisionally pivotal. Earlier herein we set forth the contents of the pathologist's findings. It contained evidentiary support of plaintiff's pleaded assertion that death was due to a lack of oxygen. The furnishing of the requisite amount of oxygen was the burden of the hospital. There was competent testimony elicited upon cross-examination that the pathological findings of cerebral edema, hypoxia, hyperemia, and acute pulmonary edema are all causable by a shortage of oxygen and that they could produce death. There was a basis for fair jury inference from the report that all other vital organs were healthy and normal, and *ergo* that other causes of death were excluded, or were at least excludable.

When the report was offered as an exhibit, the trial judge refused to admit it. Plaintiff's counsel

objected and strenuously.  He properly preserved the claimed error.  His theory of prejudice by the refusal is that as an admitted exhibit, it could have been available to the jury during its deliberations. He argues further that, because of the length of the jury's deliberations, serious questions of liability were of necessity considered, and that the availability of the report for discussion and evaluation might well have produced a different result.  We agree.

The exhibit was admissible under the business entry act.[2]  If its admissibility was denied by reason of alleged hearsay (and we cannot determine precisely the ground on which it was excluded), the objection is unmeritorious because its author was present and available for cross-examination.  The record shows that early in its deliberations, the jury asked for all the admitted exhibits.  The exclusion of this crucial item of evidence as an exhibit was reversibly erroneous.

We advert next to the exclusion of a report of an insurance adjustor presumptively representing the hospital's liability insurance carrier.  On oral argument all counsel stated openly, and upon our recorded transcript of argument, that the witness was an agent of the hospital.  Examination of the report disclosed it to have included possible admissions against interest.  Unfortunately, the cross-examination of the witness concerning this exhibit did wander into a field of conclusionary questions which entailed medical conclusionary answers which were properly excluded.  We note the foregoing because of the likelihood of the issue arising again in the event of a new trial.

---

[2] MCLA § 600.2146 *et seq.* (Stat Ann 1962 Rev § 27A.2146 *et seq.*).

For the reasons herein set forth, we affirm the jury verdict of no cause of action as to defendant Eickhorst.

We vacate the verdict and judgment of no cause of action as to defendant hospital, and reverse and remand as to it for a new trial.

Proportionate costs may be taxed against the appellee hospital. If need be, that proportioning, absent agreement, may be made by the trial judge.

All concurred.