## SIIRILA v BARRIOS

1. PHYSICIANS AND SURGEONS—MALPRACTICE—STANDARD OF CARE—COMMUNITY STANDARDS.

    It is generally necessary in order to establish a cause of action for malpractice in the case of a general practitioner that there be expert testimony that what the attending physician did was contrary to the practice in that and similar communities or that he omitted to do something which was ordinarily done in that or similar communities.

2. PHYSICIANS AND SURGEONS—MALPRACTICE—STANDARD OF CARE—SPECIALISTS—GENERAL PRACTITIONERS.

    Case precedent which holds that the standard of care for a medical specialist is that of a reasonable specialist practicing medicine in the light of present day scientific knowledge, without regard for geographical considerations, does not extend to general practitioners.

3. PHYSICIANS AND SURGEONS—MALPRACTICE—NEGLIGENCE—STANDARD OF CARE—REASONABLE MAN.

    Malpractice is a form of negligence utilizing a different standard of care than the usual "reasonable man"; a finding of negligence as a matter of law is prohibited if, viewing the facts most favorable to the opposing party, reasonable men could differ.

4. EVIDENCE—PHYSICIANS AND SURGEONS—MALPRACTICE—STANDARD OF CARE—COMMUNITY STANDARDS.

    Testimony by a physician that his treatment of a patient met community standards, necessarily based on his own knowledge of the local standards, is properly admissible.

5. TRIAL—INSTRUCTIONS TO JURY—HOSPITAL RECORDS—STANDARD JURY INSTRUCTIONS—COURT RULES.

    Refusal to give a jury instruction concerning the absence of

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 61 Am Jur 2d, Physicians, Surgeons and Other Healers, §§ 110, 111.

    Physician's or surgeon's malpractice in connection with diagnosis or treatment of rectal or anal disease, 5 ALR3d 916.

[5] 75 Am Jur 2d, Trial §§ 588, 589.

entries in hospital records is proper; court rules provide that where the Standard Jury Instruction Committee Report recommends that no instruction be given on a particular matter, the court shall not give an instruction unless it specifically finds for reasons stated on the record that (a) such an instruction is necessary to state accurately the applicable law and (b) the matter is not adequately covered by other pertinent Standard Jury Instructions (GCR 1963, 516.6[3]).

Appeal from Houghton, Stephen D. Condon, J. Submitted Division 3 February 5, 1975, at Lansing. (Docket No. 16222.) Decided February 24, 1975. Leave to appeal applied for.

Complaint by James S. Siirila, a minor, by his next friend, James Siirila and by James Siirila, individually, against Honorato Barrios, M.D., St. Joseph's Hospital, Air Shields, Inc., and Mira Corporation, for damages for medical malpractice. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Lopatin, Ward, Miller, Bindes & Freedman (Michael H. Feiler,* of counsel), for plaintiffs.

*Platt, Peacock & Denney,* for defendant Honorato Barrios, M. D.

*McLean & McCarthy,* for defendant St. Joseph's Hospital.

Before: Bashara, P. J., and R. B. Burns and Allen, JJ.

R. B. Burns, J. This is a malpractice suit wherein the plaintiffs ask us to extend the holding of *Naccarato v Grob,* 384 Mich 248; 180 NW2d 788 (1970), to general practitioners. This we cannot do. Such action can only be taken by the Supreme Court. As an intermediate appellate court we are

bound by *Lince v Monson,* 363 Mich 135; 108 NW2d 845 (1961).

James Scott Siirila was born 3-1/2 months prematurely. He was immediately placed in an "isolette" where controlled oxygen was given to him for two months. He contracted retrolental fibroplasia, a scarring of the eye tissue, resulting in total, permanent blindness. Plaintiffs claim the disease was caused by his continued exposure to oxygen while in the isolette.

At trial, plaintiffs attempted to have a Dr. Matthews testify as to the proper care and treatment of premature babies and the danger of oxygen therapy. Dr. Matthews is a specialist in pediatrics from Marquette. Dr. Barrios is a general practitioner in Houghton.

Until the *Naccarato* case the law in Michigan was as set forth in *Lince v Monson, supra,* i.e., generally, it is necessary in order to establish a cause of action for malpractice that there be expert testimony that what the attending physician did was contrary to the practice in that and similar communities or that he omitted to do something which was ordinarily done in that or similar communities.

In *Naccarato,* pp 253–254, it was stated:

"In reaching our decision today, we rely on the reasoning in *Wood v Vroman,* 215 Mich 449; 184 NW 520 (1921), (Where the defendant holds himself out as a specialist he) is 'obligated to bring to the discharge of his duty that degree of skill and knowledge possessed by physicians who are specialists in the *light of present day scientific knowledge.' (Wood v Vroman, supra,* 465, 466.) [Emphasis added in *Naccarato.]*

"It is therefore unnecessary to consider in this opinion whether a standard of parochial negligence can obviate the requirement of reasonable care by a local practitioner. At issue here is the standard of care owed

to a patient by a community of specialists. Whatever the considerations were that allowed the area practice to set the standard for the country general practitioners —they are not relevant to a metropolitan specialist— calling a specialist parochial or bucolic is hardly appropriate.

"The reliance of the public upon the skills of a specialist and the wealth and sources of his knowledge are not limited to the geographic area in which he practices. Rather his knowledge is a speciality. He specializes so that he may keep abreast. Any other standard for a specialist would negate the fundamental expectations and purpose of a speciality. The standard of care for a specialist should be that of a reasonable specialist practicing medicine in the light of present day scientific knowledge. Therefore, geographical conditions or circumstances control neither the standard of a specialist's care nor the competence of an expert's testimony."

This Court declined to extend the *Naccarato* holding in *Burton v Smith,* 34 Mich App 270; 191 NW2d 77 (1971), and stated, p 273:

"In *Naccarato* the Court did not re-examine the standard of care for a general practitioner. Consequently, the standard for general practitioners continues to be the standard of such professional practice as that in the community or similar communities."

Plaintiffs claim the trial court should have directed the jury to return a verdict finding the defendants negligent in their care and treatment of James Siirila. They claim that Dr. Barrios' admission that he did not consider the possibility of retrolental fibroplasia when he ordered oxygen treatment and the hospital's failure to keep certain records and calibrate the isolette constituted negligence as a matter of law.

Dr. Barrios contended that oxygen treatment

was necessary to save the child's life. Malpractice is a form of negligence, utilizing a different standard of care than the usual "reasonable man". A finding of negligence as a matter of law is prohibited if, viewing the facts most favorable to the opposing party, reasonable men could differ. *Morgan v Engles,* 372 Mich 514; 127 NW2d 382 (1964). The trial court did not err by refusing to direct a verdict in favor of plaintiffs.

Plaintiffs also claim the trial court erred by allowing Dr. Barrios to testify that his treatment of James Siirila met community standards.

On cross-examination the doctor stated that he did not know if other doctors in the community would administer oxygen without thinking about retrolental fibroplasia. This was a proper denial, since he could not know what any other doctor would do. His opinion was based on his own knowledge of the local standards, obtained through conversation with other doctors and his training. It was proper testimony.

The plaintiffs requested an instruction on the effect to be given the absence of entries in the hospital records. The trial judge refused to give any instruction concerning hospital records in accordance with SJI 2.12. SJI 2.12 states:

"The committee recommends that no instruction be given concerning hospital and business records."

GCR 1963, 516.6(3) states:

"Where the SJI Committee Report recommends that no instruction be given on a particular matter, the court shall not give an instruction on the matter unless it specifically finds for reasons stated on the record that (a) such an instruction is necessary to state accurately

the applicable law and (b) the matter is not adequately covered by other pertinent Standard Jury Instructions."

Under GCR 1963, 516.6(3), the trial court properly refused to instruct the jury on the hospital records.

Affirmed. Costs to defendants.