## CALLAHAN v WILLIAM BEAUMONT HOSPITAL

Opinion of the Court

1. Negligence—Medical Malpractice—Specialists—Similar Community Rule—Standard of Care.

Medical specialists are exempted from the "similar community" rule and are held only to the standard of care of a reasonable specialist practicing medicine in the light of present day scientific knowledge.

2. Negligence—Medical Malpractice—General Practitioners—Similar Community Rule—Standard of Care.

General medical practitioners continue to be subject to the "similar community" rule and in Michigan are held to that degree of skill and diligence ordinarily exercised by the average members of the medical profession in the same or similar localities with due consideration to the state of the profession at the time.

3. Negligence—Medical Malpractice—Specialists—General Practitioners—Similar Community Rule—Expert Witnesses.

A medical specialist who is acting as a general practitioner is not exempted from the "similar community" rule; where a defendant doctor is a surgeon but is not practicing surgery or utilizing any special skills and is acting as would any other doctor in treating a patient while on duty in the emergency room, the similar community rule applies and it is not error for the trial court to disqualify, as an expert witness, the doctor from other than the same or similar community who is to testify as to the standard of care for the defendant doctor.

4. Witnesses—Expert Witnesses—Standard of Care—X-rays—Trial court—Discretion.

A trial court's ruling that a doctor is incompetent to testify as an expert witness as to the standard of care required of those

References for Points in Headnotes

[1–7] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 198 *et seq.*

Admissibility in action for malpractice, of evidence as to reputation of physician or surgeon for skill and care. 48 ALR2d 249.

hospital employees who examined a plaintiff's x-rays cannot be considered an abuse of discretion where the doctor witness was not a radiologist and had admitted on voir dire that he was not entitled by training to read, quote, or diagnose from x-rays.

5. TRIAL—DIRECTED VERDICT—EXPERT WITNESSES—QUALIFICATIONS—JURY QUESTIONS.

A trial court erred in granting a directed verdict in favor of a defendant doctor at a point in the proceedings where the plaintiffs' expert witness had been ruled incompetent to testify as to the standard of care in the community in which the defendant doctor was practicing but before the plaintiffs had concluded the presentation of their case; the plaintiffs should have been allowed to present their entire case to the jury before the trial court ruled on the motion for a directed verdict.

6. NEGLIGENCE—MEDICAL MALPRACTICE—X-RAYS—DIAGNOSIS—DIRECTED VERDICT—JURY QUESTIONS.

A defendant doctor who has not viewed a patient's x-rays but relies instead on another person's report on the x-rays is not automatically relieved of liability for negligence in failing to properly diagnose the patient's fracture and a directed verdict should not be based upon the fact that the defendant doctor did not examine the x-rays personally; the plaintiffs should have the opportunity to present evidence showing that the defendant doctor may have been negligent in other ways, such as that he relied on the reports of unqualified persons or that a visual examination would have revealed the fracture and if such factual questions are raised it becomes a jury question.

CONCURRENCE BY ALLEN, J.

7. WITNESSES—EXPERT WITNESSES—SIMILAR COMMUNITY RULE—SURGEON—MEDICAL SPECIALISTS.

*A general surgeon does not fall within the category of a specialist, consequently the testimony of a plaintiff's expert witness, who is a general surgeon, is subject to the "similar community rule".*

Appeal from Oakland, William John Beer, J. Submitted December 5, 1975, at Detroit. (Docket Nos. 22830, 22831.) Decided February 10, 1976. Leave to appeal applied for.

Complaint by Patricia N. Callahan and Kenneth R. Callahan against William Beaumont Hospital

and Dr. Jerome Edward Feldstein for damages resulting from medical malpractice. The trial court entered an order of dismissal as to Dr. Feldstein as well as an order declaring a mistrial. Plaintiff appeals by leave granted. Affirmed in part, reversed in part and remanded for further proceedings.

*Balfour Peisner,* for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *John P. Jacobs),* for defendant William Beaumont Hospital.

*Sullivan, Ranger, Ward & Bone,* for defendant Feldstein.

Before: McGREGOR, P. J., and BASHARA and ALLEN, JJ.

McGREGOR, P. J. Plaintiffs, Patricia N. Callahan and her husband, Kenneth R. Callahan, brought suit against the defendants William Beaumont Hospital and Dr. Jerome Edward Feldstein, alleging negligence by the defendants in failing to diagnose and correctly treat an alleged fracture of plaintiff Patricia N. Callahan's right ankle at the hospital's emergency room.

A jury trial was commenced on April 22, 1974. In the course of plaintiffs' presentation of their case, the trial court ruled that Dr. Robert J. Huebner, called as an expert witness by the plaintiffs, was not competent to testify as to the negligence of Dr. Feldstein because Dr. Huebner had never practiced in the Detroit metropolitan area. The trial court also ruled that Dr. Huebner could not testify as to the negligence of those employees of the hospital who had examined the plaintiff's x-

rays because Dr. Huebner lacked the qualifications of a radiologist.

Following these rulings, the trial court granted a motion by the plaintiffs for a mistrial so that plaintiffs could seek an emergency appeal. At the same time, before the plaintiffs had completed the presentation of their case, the trial court also granted a motion by Dr. Feldstein to be dismissed from the case upon a directed verdict of no cause of action. Thereafter, the plaintiffs filed two applications for leave to appeal, and leave was granted by this Court on May 28, 1975.

Plaintiffs' first assignment of error concerns the trial court's refusal to permit plaintiffs' expert witness, Dr. Huebner, to testify as to the standard of care to be imposed upon the defendant Dr. Feldstein. Plaintiffs argue that since Dr. Huebner and Dr. Feldstein were both surgeons and, therefore, specialists, Dr. Huebner's expert testimony was not subject to the "similar community" rule and should have been allowed by the trial court.

Plaintiffs' argument is based on the Supreme Court's holding in *Naccarato v Grob,* 384 Mich 248; 180 NW2d 788 (1970). Before that decision, all doctors in Michigan were held to "that degree of skill and diligence ordinarily exercised by the average members of the medical profession in the same or similar localities with due consideration to the state of the profession at the time".[1] The *Naccarato* decision, however, exempted specialists from the "similar community" rule, holding them only to the standard of care of a reasonable specialist practicing medicine in the light of present-day scientific knowledge. This decision did not affect the standard of care required of general

---

[1] *Bradshaw v Blaine,* 1 Mich App 50, 53; 134 NW2d 386 (1965). *See also Lince v Monson,* 363 Mich 135; 108 NW2d 845 (1961).

practitioners. They continued to be subject to the "similar community" rule.[2]

Even if it is assumed that Dr. Huebner and Dr. Feldstein are, in fact, specialists,[3] we nevertheless hold that the trial court properly invoked the "similar community" rule in the present case.

In *Naccarato, supra,* the Court stated:

"The reliance of the public upon the skills of a specialist and the wealth and sources of his knowledge are not limited to the geographic area in which he practices. Rather his knowledge is a specialty. He specializes so that he may keep abreast. Any other standard for a specialist would negate the fundamental expectations and purpose of a specialty. The standard of care for a specialist should be that of a reasonable specialist practicing medicine in the light of present day scientific knowledge. Therefore, geographical conditions or circumstances control neither the standard of a specialist's care nor the competence of an expert's testimony." 384 Mich 253–254.

It is clear from the foregoing that the *Naccarato* decision was grounded to a large degree on the reliance and expectations of the public with respect to the skills possessed by a specialist. Consequently, if a doctor does become a specialist, he thereby represents to the public that he has special knowledge and skills not possessed by a general practitioner and that he also keeps abreast with the advances in his specialty.

In the present case, however, Dr. Feldstein, although a surgeon, was not practicing surgery or utilizing any special skills of a surgeon when he

[2] *See Burton v Smith,* 34 Mich App 270; 191 NW2d 77 (1971), *Siirila v Barrios,* 58 Mich App 721; 228 NW2d 801 (1975).

[3] *But see Abbe v Woman's Hospital Association,* 35 Mich App 429; 192 NW2d 691 (1971), which held that a general surgeon does not fall within the category of a specialist.

treated the plaintiff. Rather, in wrapping the plaintiff's ankle in an Ace bandage and telling her to take aspirin for the pain, Dr. Feldstein was acting in the same manner as would any other doctor on duty at the emergency room of the defendant hospital. Furthermore, the injury suffered by the plaintiff was not an injury requiring treatment by a surgeon, nor is there any indication that the knowledge and skills that Dr. Feldstein gained by virtue of his specialization in any way better prepared him to examine and treat the plaintiff's injury. Under these circumstances, there is no holding out of special skills or knowledge on the part of Dr. Feldstein, nor is there any reliance upon such special skills or knowledge by the plaintiff. As a result, we decline to extend the holding of the *Naccarato* decision to the facts of the present case, since the rationale underlying that decision has no application here.

Moreover, this case involves treatment in the emergency room of a large metropolitan hospital. It is entirely possible that the conditions present in an emergency room of a Detroit area hospital are so different from those in an emergency room of a small-town hospital, that any comparisons made by a small-town doctor would be unfair to a doctor practicing in the big-city hospital. It is also possible that the number of cases handled in the emergency room of a big-city hospital as well as the nature of those cases may differ so significantly from the nature and volume of cases handled in the emergency room of a small-town hospital that comparisons of the procedures used in each to examine a person seeking emergency treatment would be misleading. Factors such as these further support the application of the "local community" rule to the facts of the present case.

Consequently, the trial court did not err in not permitting Dr. Huebner to testify as to the negligence of Dr. Feldstein.

For the same reasons, it follows that the trial court was also correct in not permitting Dr. Huebner to give expert testimony against the hospital's employees who examined the plaintiff's x-rays. Furthermore, as noted above, the trial court also ruled that Dr. Huebner was incompetent to give such testimony since Dr. Huebner was not a radiologist. On voir dire, Dr. Huebner stated that he was not entitled by training to read, quote, or diagnose from x-rays. Based on this admission, it would appear that Dr. Huebner was not qualified to testify as to the standard of care required of those employees who examined plaintiff's x-rays. As a result, the trial court's ruling on this matter cannot be considered an abuse of discretion. See *Smith v Children's Hospital of Michigan,* 33 Mich App 186, 188–189; 189 NW2d 753 (1971).

Plaintiffs lastly contend that the trial court erred by granting a directed verdict in favor of Dr. Feldstein before the plaintiffs had concluded the presentation of their case. We agree.

First of all, the plaintiffs' attorney indicated to the court that he was prepared to present other testimony concerning the malpractice of Dr. Feldstein. Thus, the plaintiffs may have been able, even without the testimony of Dr. Huebner, to present sufficient evidence of negligence by Dr. Feldstein to warrant submission of the case against him to the jury. Plaintiffs should have been allowed to present their entire case to the jury before the trial court ruled on the motion for a directed verdict.

Secondly, it appears that the trial court directed the verdict because Dr. Feldstein, having never

seen the x-rays, could not be liable for reading them improperly. If the directed verdict was, in fact, based on this ground, it would have been improperly granted. It is possible that the plaintiff's fracture was such that it could have been noticed by a simple visual examination. Therefore, in spite of the fact that Dr. Feldstein may have been told that the x-rays indicated that there had been no fracture, it is possible that he should have discovered from personal observation that the plaintiff required more treatment than just an Ace bandage. In addition, depending upon such factors as qualifications of those who actually read the x-rays and reported the results to Dr. Feldstein, it is also possible that Dr. Feldstein was negligent by relying on those reports and not personally reading the x-rays.

Thus, even if Dr. Feldstein did not read the x-rays, additional testimony, either expert or otherwise, could have raised several questions of fact which would have entitled the plaintiffs to have the issue of Dr. Feldstein's negligence decided by the jury. As a result, the trial court erred by prematurely granting the motion for a directed verdict.

Affirmed in part. Reversed in part. Remanded for proceedings consistent with this opinion.

ALLEN, J. *(concurring).* I agree in the decision announced in Judge McGREGOR's opinion. However, I do so solely on the basis of *Abbe v Woman's Hospital Association,* 35 Mich App 429; 192 NW2d 691 (1971), cited in footnote 3 by Judge McGREGOR, in which our Court held that a general surgeon does not fall within the category of a specialist. Consequently, the testimony of plaintiff's expert witness, Dr. Huebner, a general surgeon, was subject to the "similar community rule". I do not

think it necessary or wise to go further and justify our decision by reference to *Naccarato v Grob,* 384 Mich 248; 180 NW2d 788 (1970). As was said by this Court in the recent case of *Siirila v Barrios,* 58 Mich App 721; 228 NW2d 801 (1975):

"This is a malpractice suit wherein the plaintiffs ask us to extend the holding of *Naccarato v Grob,* 384 Mich 248; 180 NW2d 788 (1970), to general practitioners. This we cannot do. Such action can only be taken by the Supreme Court." *Siirila v Barrios, supra,* at 722.

My colleague's opinion extends *Naccarato* by drawing distinctions in the types of activities performed by the medical specialist. I do not believe this was intended by the holding therein. If so, it is a distinction which should be taken by the Supreme Court. More importantly, the distinction is not necessary for the result arrived at in this case.