NEMZIN v SINAI HOSPITAL

Docket No. 60587. Submitted November 6, 1984, at Detroit.—Decided
    July 1, 1985.

Plaintiff, Lawrence J. Nemzin, brought an action for damages
    against Sinai Hospital for injuries allegedly suffered in a fall
    from a hospital bed. His claim was based on the alleged
    negligent failure of hospital employees to raise the bed safety
    rails into position while plaintiff was in a semi-conscious or
    unconscious condition. Plaintiff had executed a standard arbi-
    tration agreement when he entered the hospital. The Wayne
    Circuit Court, Thomas J. Brennan, J., granted accelerated
    judgment in favor of defendant, holding that the arbitration
    agreement divested the court of subject-matter jurisdiction.
    Plaintiff appealed, alleging that his claim is outside the scope of
    the arbitration agreement because it is based on allegations of
    ordinary negligence rather than medical malpractice or negli-
    gence in the performance of professional services. *Held:*

    1. The medical malpractice arbitration act should be con-
    strued to authorize arbitration of claims based on ordinary
    negligence arising out of health care or treatment as well as
    claims of medical malpractice or negligence in the performance
    of professional services.

    2. The arbitration agreement executed by plaintiff clearly
    conveyed to the plaintiff that the agreement included claims
    based on ordinary negligence.

    Affirmed.

    GRIBBS, P.J., concurred in the result. He would hold that
    plaintiff's claim was one of malpractice rather than ordinary
    negligence. Moreover, even assuming *arguendo* that plaintiff's
    claim was one of ordinary negligence, it was within the scope of

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] Am Jur 2d, Statutes § 142 *et seq.*

[2] Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.
    Arbitration of medical malpractice claims. 84 ALR3d 375.
    Validity and construction of state statutory provisions relating to
        limitations on amount of recovery in medical malpractice claim
        and submission of such claim to pretrial panel. 80 ALR3d 583.

[4] Am Jur 2d, Physicians, Surgeons, and Other Healers § 326 *et seq.*

the arbitration agreement because it arose out of health care or treatment by the hospital. Judge GRIBBS would find the majority's holding too broad, as encompassing all negligence on the part of a health care provider rather than only those claims arising out of health care or treatment.

### OPINION OF THE COURT

1. STATUTES — JUDICIAL CONSTRUCTION.

An established principle of statutory construction is that a modifying clause is confined to the last antecedent unless something in the subject matter or dominant purpose of the statute requires a different interpretation.

2. NEGLIGENCE — MEDICAL MALPRACTICE — ARBITRATION.

A claim brought against a hospital by a patient which is based upon ordinary negligence rather than medical malpractice or negligence in the performance of professional services is within the scope of a standard arbitration agreement which applies to "any claims or disputes which may arise * * * out of or in connection with the health care rendered"; the Legislature did not intend to limit the scope of arbitration under the medical malpractice arbitration act to claims falling within narrow definitions of "medical malpractice" or "negligence in the performance of professional services" (MCL 600.5040 et seq.; MSA 27A.5040 et seq.).

3. STATUTES — JUDICIAL CONSTRUCTION.

Words and phrases used in a particular section of a statute must be assigned meanings which harmonize with the statute as a whole.

### CONCURRENCE BY GRIBBS, P.J.

4. NEGLIGENCE — MEDICAL MALPRACTICE — PLEADING.

*An allegation that a defendant hospital did not comply with the standard of care and skill of hospitals in the same or similar localities is a claim of malpractice, not ordinary negligence.*

5. NEGLIGENCE — MEDICAL MALPRACTICE — ARBITRATION.

*The scope of a medical malpractice arbitration agreement is limited to claims arising out of health care or treatment, whether the claim is labeled "malpractice" or "negligence".*

*Zeff, Zeff & Materna* (by *Fred A. Custer*), and *Gromek, Bendure & Thomas* (by *Daniel J. Wright*), of counsel, for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C. (by Stephen M. Kelley), for defendant.*

Before: Gribbs, P.J., and D. E. Holbrook, Jr., and N. J. Lambros,* JJ.

· N. J. Lambros, J. This case presents a question concerning the construction of the medical malpractice arbitration act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.* Plaintiff was a patient in defendant hospital, and he brought this action to recover damages for injuries allegedly suffered in a fall from a hospital bed. Plaintiff claimed that he was semi-conscious or unconscious at the time of the fall as the result of an operation and that his fall was due to the negligent failure of hospital employees to raise the bed safety rails into position. Plaintiff executed a standard arbitration agreement when he entered defendant hospital and never revoked it. The circuit court granted defendant's motion for accelerated judgment, holding that the agreement to arbitrate divested the court of subject-matter jurisdiction, and plaintiff appeals as of right.

Plaintiff argues that his claim is outside the scope of the agreement to arbitrate authorized by the statute, because his claim is based on allegations of ordinary negligence rather than medical malpractice or negligence in the performance of professional services. We will assume without deciding that an arbitration agreement like that at issue here is unenforceable unless it strictly complies with the statute.[1] We will also assume without deciding that plaintiff's claim is based on

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] See *Ewald v Pontiac General Hospital,* 121 Mich App 793, 797; 329 NW2d 495 (1982); but compare *E E Tripp Excavating Contractor, Inc v Jackson County,* 60 Mich App 221, 235, 241-247; 230 NW2d 556 (1975).

ordinary negligence rather than medical malpractice[2] or negligence in the performance of professional services.[3]

Plaintiff relies on the emphasized language in MCL 600.5040(1); MSA 27A.5040(1), which provides:

"The provisions of this chapter shall be applicable to the arbitration of a dispute, controversy, or issue arising out of or resulting from injury to, or the death of, a person *caused by an error, omission, or negligence in the performance of professional services* by a health care provider, hospital, or their agent, or based on a claimed performance of such services without consent, in breach of warranty, or in violation of contract." (Emphasis added.)

The language on which plaintiff relies is ambiguous. The quoted section, considered in isolation, does not show whether the phrase "in the performance of professional services" was intended to modify the entire phrase "an error, omission, or negligence" or merely the word "negligence". Other considerations, however, convince us that the phrase was intended to modify only the word "negligence" and that the statute authorizes agreements to arbitrate any claims arising out of health care or treatment based on negligence in the performance of professional services, errors, or omissions by health care providers, hospitals, or their agents.

An established principle of statutory construction is that a modifying clause is confined to the last antecedent unless something in the subject matter or dominant purpose of the statute requires a different interpretation. *Haveman v Kent*

[2] Compare, for example, *Kambas v St Joseph's Mercy Hospital of Detroit,* 389 Mich 249, 254-256; 205 NW2d 431 (1973).

[3] Compare, for example, *D'Antoni v Sara Mayo Hospital,* 144 So 2d 643 (La App, 1962).

*County Road Comm'rs,* 356 Mich 11, 18; 96 NW2d
153 (1959); *Winokur v Michigan State Board of
Dentistry,* 366 Mich 261, 266; 114 NW2d 233
(1962). Nothing in the subject matter or the domi-
nant purpose of the statute requires a different
result here. The Legislature intended this statute
to be a measure to contain rapidly-escalating
health care costs by reducing litigation. That pur-
pose would be served, not hindered, by construing
the statute to authorize agreements to arbitrate
claims of ordinary negligence arising out of health
care or treatment as well as claims of medical
malpractice or negligence in the performance of
professional services.

Moreover, the words and phrases used in a
particular section of the statute must be assigned
meanings which harmonize with the statute as a
whole. See *Arrowhead Development Co v Living-
ston County Road Comm,* 413 Mich 505, 516; 322
NW2d 702 (1982). Broad language used in other
sections of the statute at issue here shows that the
Legislature did not intend to limit the scope of
arbitration under the statute to claims falling
within narrow definitions of "medical malpractice"
or "negligence in the performance of professional
services". See MCL 600.5041(1); MSA 27A.5041(1):

"A person who receives health care from a health
care provider may, if offered, execute an agreement to
arbitrate a dispute, controversy, or issue *arising out of
health care or treatment* by a health care provider who
is not an employee of a hospital." (Emphasis added.)

See also MCL 600.5042(1); MSA 27A.5042(1):

"A person who receives health care in a hospital may
execute an agreement to arbitrate a dispute, contro-
versy, or issue *arising out of health care or treatment*
rendered by the hospital. A person receiving emergency

health care or treatment may be offered the option to arbitrate but shall be offered the option after the emergency care or treatment is completed." (Emphasis added.)

Plaintiff asserts that an ordinary patient would not understand that claims based on ordinary negligence would fall within the scope of the arbitration agreement. We cannot agree. The following provision of the standard agreement plaintiff executed clearly conveyed the broad scope of the agreement:

"I understand that this hospital and I by signing this document agree to arbitrate *any claims or disputes* (except for disputes over charges for services rendered) *which may arise in the future out of or in connection with the health care rendered to me* during this hospital stay and/or emergency room visit by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate." (Emphasis added.)

Other issues raised by plaintiff are without merit.[4]

---

[4] Plaintiff's argument that the statute deprived him of the constitutional right to an impartial decisionmaker is refuted by *Morris v Metriyakool,* 418 Mich 423; 344 NW2d 736 (1984). Plaintiff also argues that the statute violates Const 1963, art 4, § 24, which requires that "[n]o law shall embrace more than one object, which shall be expressed in its title," but this argument is based on a fundamental mistake. Plaintiff's argument is directed to the short title which the Legislature authorized in 1975 PA 140, § 3 for citation to the statute, the "R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975." The actual title of the statute is:

"AN ACT to amend Act No. 236 of the Public Acts of 1961, entitled as amended 'An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof; the forms and attributes of civil claims and actions; the time within which civil actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in civil and criminal actions and proceedings in said courts; to provide remedies and penalties for the violation of certain provisions of this act; and to

Affirmed.

D. E. HOLBROOK, JR., J., concurred.

GRIBBS, P.J. *(concurring)*. I concur in the result but for reasons different than those stated in my brother LAMBROS's opinion. I would find that the plaintiff is bound by the arbitration agreement because plaintiff's claim is grounded in negligence in the performance of professional services by defendant hospital or, in the alternative, negligence arising out of health care or treatment.

A hospital may be sued for either malpractice[1] or "ordinary" negligence. See *Adkins v Annapolis Hospital,* 116 Mich App 558; 323 NW2d 482 (1982), *aff'd* 420 Mich 87; 360 NW2d 150 (1984); MCL 600.5838; MSA 27A.5838. Malpractice is essentially negligence in the performance of professional services utilizing the standard of care of the profession. See *Rogers v Horvath,* 65 Mich App 644, 646-647; 237 NW2d 595 (1975); *Siirila v Barrios,* 58 Mich App 721, 725; 228 NW2d 801 (1975), *aff'd* 398 Mich 576; 248 NW2d 171 (1976).

In the case at bar, plaintiff's complaint alleged that plaintiff entered defendant hospital for surgery, relying on the specialty and skill of the hospital in the care and treatment of patients. It

repeal all acts and parts of acts inconsistent with, or contravening any of the provisions of this act,' as amended, being sections 600.101 to 600.9934 of the Compiled Laws of 1970, by adding section 5033 and chapter 50a."

Plaintiff has waived any argument that the actual title of the statute is insufficient. See *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

[1] Although a malpractice claim against a hospital may be based on vicarious liability for the malpractice of health care personnel for their negligent performance of professional services such as diagnoses, prescriptions, operation, etc., the hospital may also be liable for its own malpractice which consists of the professional services rendered by a hospital which are distinct from the services of its employees and agents, such as, for example, the hiring and supervision of medical personnel.

alleged that defendant hospital undertook to pro-
vide the services of doctors, nurses and other
health care personnel and had a duty to exercise
that degree of care, skill and diligence ordinarily
used by hospitals in the same or similar locality in
furnishing a patient with care and attention as
required by the patient's condition. The complaint
further alleged that defendant hospital breached
this duty and was negligent in the care and treat-
ment of plaintiff by failing to select, engage and/or
hire capable, competent, skilled and qualified
health care providers and personnel, failing to
adequately direct, supervise, monitor and control
such providers and personnel, failing to supervise
the care and treatment of plaintiff, failing to pro-
vide a safe environment for plaintiff's post-opera-
tive recovery, and failing to protect an unconscious
patient and timely attend to plaintiff's condition
after he sustained injuries in the fall from the
hospital bed.

I would find that plaintiff's claim against defen-
dant hospital sounds in malpractice, rather than
"ordinary" negligence. See *Penner v Seaway Hos-
pital,* 102 Mich App 697, 704-705; 302 NW2d 285
(1981). Plaintiff's complaint alleged that defendant
hospital did not comply with the standard of care
and skill of hospitals in similar localities. It al-
leged that defendant hospital breached its duty to
meet this standard of care in its care and treat-
ment of plaintiff, in its selection and supervision of
staff, and in providing a safe environment for post-
surgical care. In sum, plaintiff claimed defendant
hospital was negligent in performing those profes-
sional services rendered by a hospital.[2] Thus plain-

---

[2] In the case at bar, plaintiff's complaint alleged that a hospital
employee, agent or servant examined plaintiff after surgery and failed
to replace the safety rails on plaintiff's hospital bed. The failure to
replace the bedrail may sound in ordinary negligence. *Cf., D'Antoni v*

tiff's claim was within the scope of MCL 600.5040;
MSA 27A.5040, providing for arbitration agreements covering negligence in the performance of
professional services of a hospital.

In the alternative, if plaintiff's claim sounds in
ordinary negligence[3] since it was ultimately based
on the failure to raise a bedrail, I would still find
that his claim falls within the scope of the medical
malpractice arbitration act. Assuming *arguendo*
that the majority correctly construes MCL
600.5040(1); MSA 27A.5040(1) as encompassing "ordinary" negligence, I find too broad the majority's
opinion that *all* negligence on the part of a health
care provider or hospital falls within the scope of
the medical malpractice arbitration act. The provision in question must be read in context with the
entire medical malpractice arbitration act. See
*Arrowhead Development Co v Livingston County
Road Comm,* 413 Mich 505, 516; 322 NW2d 702
(1982). MCL 600.5041(1); MSA 27A.5041(1), and
MCL 600.5042(1); MSA 27A.5042(1) provide that a
person receiving health care, *i.e.,* a patient, may
execute an agreement to arbitrate disputes *arising
out of health care or treatment* by a health care
provider or hospital. Reading MCL 600.5040(1);
MSA 27A.5040(1) in context with these provisions

*Sara Mayo Hospital,* 144 So 2d 643 (La App, 1962); *contra, American
Policyholders Ins Co v Michota,* 156 Ohio St 578; 103 NE2d 817 (1952)
("professional services" construed in the context of insurance policies).
Plaintiff did not, however, base his claim on the employee's negligence or assert that defendant hospital was vicariously liable for the
negligent actions of the employee in failing to replace the bedrail.
Plaintiff alleged that his injuries were due to the misfeasance or
nonfeasance of services performed by defendant hospital, such as
hiring, supervision of care and treatment, etc. Contrast *Grewe v Mt
Clemens General Hospital,* 404 Mich 240, 248; 273 NW2d 429 (1978)
(plaintiff's complaint alleged negligence on the part of the hospital's
"agents" and the pleadings were broad enough to encompass an
allegation of derivative liability of the hospital).

[3] Some hospital errors in patient treatment may be ordinary negligence rather than malpractice. *Adkins,* 420 Mich 95, fn 10.

of the act, I would hold that the scope of arbitration agreements is limited to claims arising out of health care or treatment, whether they be labeled malpractice or negligence.

Extending the medical malpractice arbitration act to all negligence on the part of a health care provider or hospital, without limiting it to claims arising out of health care or treatment, would yield untenable results. For example, if an able-bodied patient executed an arbitration agreement with a treating physician, and tripped on torn carpeting in the physician's office lobby, I would be hard pressed to find that the arbitration agreement covered the negligence of the physician in failing to maintain or repair the carpet. Similarly, I would not find that the arbitration act extended to a negligence claim brought against a hospital by a patient who slips and falls in the visitors' gift shop solely due to an overwaxed floor.

In the case at bar, even if plaintiff's claim against defendant hospital is characterized as "ordinary" negligence, his claim arises out of his post-surgical care and treatment and thus falls within the scope of the arbitration act.

I concur in affirming the trial court.